Rafaela **RODRIGUEZ**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services.**

Civ. A. No. 81–0578.

United States District Court, E. D. Pennsylvania.

Oct. 7, 1981.

Michael M. Goss, Philadelphia, Pa., for plaintiff.

Peter F. Vaira, U. S. Atty., Edward F. Borden, Jr., Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This action is brought under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health and Human Services ("Secretary"), denying plaintiff's claim for disability insurance benefits under Sections 216(i) and 223 of the Act, 42 U.S.C. §§ 416(i) and 423, and plaintiff's claim for supplemental security income benefits under Sections 1602, 1611(a) and 1614(a) of the Act, 42 U.S.C. §§ 1381a, 1382(a) and 1382c(a).

Plaintiff, Rafaela Rodriguez, is a fifty year old female who claims to have been disabled since July 2, 1977. Her concurrent applications for benefits were filed on July 3, 1979. Each application was denied by the Social Security Administration both initially and upon reconsideration. On July 15, 1980, a hearing *de novo* was held before an Administrative Law Judge ("ALJ"). Ms. Rodriguez appeared with her attorney and a Spanish interpreter and testified. A decision, again denying benefits, was handed down on October 28, 1980. This decision became the final decision of the Secretary when the Appeals Council approved the decision on January 12, 1981. This appeal followed on February 13, 1981. The parties have filed cross-motions for summary judgment.

Section 205(g) of the Social Security Act governs judicial review by a district court of the Secretary's determinations regarding disability benefits, specifying that

> [T]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). On appeal, the Secretary's findings of fact shall be conclusive "if supported by substantial evidence." *Id.* Substantial evidence has been defined in this Circuit to mean

> more than a mere scintilla. It means such relevant evidence as a reasoning mind might accept as adequate to support a conclusion.

*Smith v. Califano,* 637 F.2d 968, 970 (3d Cir. 1981), quoting from *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981); *Lewis v. Califano,* 616 F.2d 73, 76 (3d Cir. 1980).

The specific issue in this proceeding is whether the Secretary's determination that Ms. Rodriguez does not suffer from an impairment of such severity as to make her eligible for either benefit is supported by substantial evidence. In this regard, the test of eligibility for disability insurance benefits under Section 223(d)(2)(A), 42 U.S.C. § 423(d)(2)(A), is identical to the test of eligibility for supplemental security income benefits under Section 1614(a)(3)(B), 42 U.S.C. § 1382c(a)(3)(B). First, the claimant must have a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted, or can be expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). Next, the claimant's impairment must be so severe as to prevent her from engaging either

in her previous work or, considering her age, experience, education or work experience, "in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). The claimant satisfies her initial burden of showing that she is unable to return to her previous work when her subjective claim is substantiated by medical evidence. *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979). Once the claimant has made such a showing, the burden of proof then shifts to the Secretary, who must demonstrate that the claimant has the capacity to do specific jobs existing in the economy. *Rossi v. Califano, supra*, 602 F.2d at 57.

In the instant case, plaintiff has a fifth grade education received in Puerto Rico. She does not read or write in English and is able to speak the language only to a very limited extent. She is able to read and write in Spanish. She has no vocational training. Her work experience includes operating a cigar rolling machine and a sewing machine in Puerto Rico. Plaintiff testified at her hearing that she left her work in 1974 due to her pain and illnesses. (Tr. 51). The ALJ found that plaintiff suffered from the following medically determinable impairments: controlled hypertension, obesity, intercostal neuritis, mild osteoarthritis of the lumbar, dorsal and cervical spines, and synovial hypertrophy of the knees with mild degenerative arthritis. (Tr. 28). The ALJ determined, however, that these impairments did not significantly limit the plaintiff's abilities to engage in basic work activities and, therefore, under the applicable regulations, could not be characterized as severe. (Tr. 28–29). *See* 20 C.F.R. §§ 404.-1520 and 404.1521 (1981). Because plaintiff did not suffer from a severe impairment, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 29). The ALJ also found that plaintiff's testimony as to her pain and limitations was not credible on the

theory that it was not supported by the medical evidence or by plaintiff's appearance at the hearing. The ALJ found that the plaintiff's pain was not of sufficient severity, persistence or duration to have disabled her. (Tr. 29).

### I.

Plaintiff contends that the ALJ failed to give sufficient weight to her testimony of subjective pain. Plaintiff's complaints of severe pain recur throughout the record in the medical reports submitted to support her claim. (Exhibits 33, 34, 35, 37, 39, 41, 44, 53, 54, 55, 56). Plaintiff testified at her hearing that she suffers from disabling pain which she characterized as "a very, very strong pain, ... very deep in the bones." (Tr. 51). Plaintiff testified that prior to 1974 she missed days at work due to the pain in her back, legs, knees and chest. She finally left her work in 1974 because the pain in her body was so great that it drained all of her strength. (Tr. 49–51). Plaintiff further testified that she had been treated for pain in her legs. She indicated that the circulation in her legs was not good, causing her to wake in the night with throbbing pain. (Tr. 56). Plaintiff also stated that she had been prescribed the use of a cane to help her cope with pain in the bones of her heel,[1] and that this pain restricted her from walking any distance greater than one block. According to plaintiff's testimony, she has been taking medication for pain for approximately twenty years, but the medication makes her feel only "a little bit alleviated." (Tr. 61). She also takes medication to help her sleep. Moreover, "I have to have my pills beside my bed [b]ecause I wake up in the morning very ill with a lot of pain in my body." (Tr. 63). Finally, plaintiff testified that she does not use public transportation because she is unable to ascend into the bus. In her words: "... when you have to wait for the bus, you have to go up, and its like tearing." (Tr. 64).

---

1. In September, 1979, plaintiff had been admitted to St. Mary Hospital in Philadelphia because of complaints of heel pain. She was found to have calcaneal spurs bilaterally, which were excised. (Exhibit 54).

A claimant's assertions of pain must be given serious consideration. *Smith v. Califano, supra,* 637 F.2d at 972; *Baerga v. Richardson,* 500 F.2d 309 (3d Cir. 1974), *cert. den.,* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). *See King v. Secretary of Health, Education and Welfare,* 481 F.Supp. 947 (E.D.Pa.1979). Indeed, evidence of disabling pain, even though unaccompanied by objective medical data, can provide a basis for a finding of disability. *Id.* at 948. *Accord, Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir. 1971); *Baith v. Weinberger,* 378 F.Supp. 596, 603 (E.D.Pa. 1974) (Luongo, J.). Even where a claimant's subjective complaints of pain are not fully confirmed by objective evidence, the Secretary is bound to give those complaints serious consideration. *Smith v. Califano, supra,* 637 F.2d at 972.

In the instant case, the ALJ appears to have taken an opposite view of the applicable legal standard:

> The effects of all symptoms, including severe and prolonged pain, must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptom. *A disability will not be found based on the symptoms, including pain, unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce those symptoms.*

(Tr. 19–20). (Emphasis supplied). Although recognizing plaintiff's well-documented history of complaints of severe pain, the relevant portions of the ALJ's opinion evince a failure to evaluate those complaints under any standard other than the medical evidence of record:

> Despite [claimant's] complaints of severe pain, there had been only minimal abnormal x-ray findings and there had been no significant reduction of motion of any of her joints except for her limitation of lumbar flexion. Despite her complaints of pain lasting for a number of years, she was found by Dr. Ferraiuoli (Exhibit 37), Dr. Badillo (Exhibit 34), and Dr. Munoz (Exhibit 40) as being only mildly restricted as to her ability to perform at work

activities. . . . The medical evidence does not show that her symptoms are so severe that she will be unable to use public transportation. In summary, the Administrative Law Judge finds that the claimant's complaints of pain and limitations are exaggerated and are inconsistent with the medical reports both prior to December 31, 1977 and as of the present time and are not credible.

(Tr. 26–27).

I find plaintiff's testimony of constant pain compelling. In this regard, the record of this proceeding is without sufficient indication that plaintiff's specific complaints were dismissed other than by mere assertion. Laboring under the misconception that plaintiff's testimony as to subjective pain "must be evaluated on the basis of a medically determinable impairment," the ALJ discredited plaintiff's testimony without appropriate consideration of plaintiff's subjective claims. "Where . . . the [ALJ] has made a determination of credibility upon an improper basis, the law has been improperly applied, and the case must be remanded to the Secretary for a proper determination." *King v. Secretary of Health, Education & Welfare, supra,* 481 F.Supp. at 949. *See also Roberts v. Califano,* 439 F.Supp. 188 (E.D.Pa.1977) (Huyett, J.); *Brittingham v. Weinberger,* 408 F.Supp. 606 (E.D.Pa.1976) (Bechtle, J.). Plaintiff's subjective pain, even if completely unconfirmed by the medical evidence, may nonetheless be of sufficient severity to render her disabled.

The Secretary argues that complaints of pain which are grossly disproportionate to the medical findings may be discounted as not credible. *Baith v. Weinberger, supra,* 378 F.Supp. at 603. A careful review of the medical evidence reveals, however, that plaintiff's complaints are not in gross disproportion to the medical findings as a whole. A report submitted by Dr. Badillo on November 3, 1971, (Exhibit 34), indicates that plaintiff was treated for constant chest pain with heaviness over her left precordium radiating to her neck and back. On January 25, 1972, Dr. Dixon reported that

his examination disclosed the existence of pain over the patient's left clavicle and sternum. (Exhibit 35). Dr. Dixon diagnosed the plaintiff as suffering from a number of ailments, including moderate anxiety, moderate hypertension and obesity. A report submitted by Dr. Ferraiuoli on May 30, 1974, (Exhibit 37), detected back pain at times radiating to plaintiff's left hip. He diagnosed mild lumbar myositis and moderate genu valgus. X-rays also revealed a transitional 1st sacral vertebra with left pseudoarthrosis. Dr. Ferraiuoli concluded that plaintiff could stand or walk only up to three hours a day, and could sit for less than five hours. On October 17, 1974, plaintiff was diagnosed by Dr. Alfonso as suffering from chronic and severe intercostal neuritis. (Exhibit 39). X-rays revealed osteoarthritis of the cervical spine. In April, 1978, an examination by Dr. Demoura revealed the presence of pain and synovial hypertrophy of both knees. (Exhibit 41). Dr. Demoura also diagnosed osteoarthritis of the cervical and lumbosacral spines and both knees. He found that movements of the lumbosacral spine were painful, with a limitation of 55% of the flexion, 50% of the extension and bending to the sides in that area. X-rays of both knees showed presence of degenerative changes. Dr. Demoura's report includes the following recommendation: "I believe that patient should continue with [the] conservative treatment she is having at present. However, I do not anticipate complete improvement of her symptoms and patient will have aggravation of her symptoms from time to time and as she gets older and when performing activities that require weight lifting, bending, standing, walking and sitting for prolonged periods of time." (Tr. 213). On July 3, 1980, plaintiff was examined by Drs. Tabby and Jacobson. They reported that plaintiff had been under their care since January, 1980, for complaints of chest pain and arthritic pains in her back and knees, and had been prescribed Clinoril 200 BID and other analgesic medicines to relieve the pain. (Exhibit 56). Their report concludes as follows: "The prognosis in this case is poor since the patient has arthritis disc degeneration and scoliosis of the lumbar spine which causes much limitation of motion. She is also obese and this does not help her condition." (Tr. 294).

Even under the more critical standard enunciated by the ALJ, I believe that the medical evidence sufficiently demonstrates the existence of conditions which could reasonably be expected to produce plaintiff's subjective symptoms of pain. As such, I find the medical evidence to be consistent with, rather than in gross disproportion to, plaintiff's complaints. The ALJ rejected the medical reports of pain on the theory that the underlying conditions were not of sufficient severity significantly to affect the plaintiff's ability to engage in basic work functions. A conclusion on this basis again evinces a failure seriously to address the subjective effects of pain on the plaintiff.

Furthermore, the ALJ failed to explain why medical evidence supporting plaintiff's claim of inability to engage in basic work functions was rejected. This Circuit has recognized that

> there is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record. . . .
>
> *    *    *    *    *    *
>
> Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, [citation], an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.

*Cotter v. Harris, supra,* 642 F.2d at 706–07. In this case, the ALJ most notably failed to indicate why the reports of Dr. Demoura (Exhibit 41), anticipating the aggravation of plaintiff's symptoms, and Drs. Tabby and Jacobson (Exhibit 56) finding significant limitations of plaintiff's motion, were rejected.

The record also contains evidence which, while of a less "objective" nature, is as equally probative, and which tends to substantiate plaintiff's complaints. Plaintiff testified that she lives in a second-floor apartment and goes to the street level only twice a month to pick up her public assistance check. She does not attend church or visit friends. She had worn a back brace all day for two months prior to her hearing. In short, plaintiff's testimony as to her lifestyle supports her claims of severe and disabling pain. No satisfactory explanation is offered by the ALJ as to why this subjective evidence was not considered. In *Smith v. Califano, supra,* 637 F.2d at 972, the court noted that failure seriously to consider subjective evidence of pain may by itself constitute proper ground for reversal. *See Thorne v. Weinberger,* 530 F.2d 580, 583 (4th Cir. 1976); *Gaultney v. Weinberger,* 505 F.2d 943, 945 (5th Cir. 1974).

For all of the foregoing reasons, I find that the Secretary's determination as to the incredibility of plaintiff's complaints of pain is not supported by substantial evidence. Accordingly, this matter should be returned to the ALJ for reconsideration based on the principles set forth above.

## II.

Plaintiff also contends that the Secretary failed to consider the combined effects of her various afflictions. She argues that the combined effects of her multiple impairments preclude her from engaging either in her past or any other work.

Where there are several illnesses suffered simultaneously by a claimant, the combined effects of the impairments must be considered before the Secretary can deny the payment of benefits. *Bittel v. Richardson, supra,* 441 F.2d at 1195. *See Roberts v. Califano, supra,* 439 F.Supp. 188. *See also* 20 C.F.R. § 404.1522 (1981), providing that the Secretary "can combine unrelated impairments to see if together they are severe enough to keep [the claimant] from doing substantial gainful activity." Moreover, when a claimant is found to be severely impaired, the Secretary is bound, pursuant to 20 C.F.R. §§ 404.1520(e) and 404.1520(f) (1981), to consider the claimant's "residual functional capacity"—i. e., what the claimant is able to do despite her limitations—along with the claimant's age, education and work experience, in determining whether the claimant is precluded from "past relevant" or any other work. Under 20 C.F.R. § 404.1545(a), where a claimant suffers from more than one impairment, the Secretary is bound to consider all impairments in determining the claimant's residual functional capacity.

In the instant case, plaintiff suffers from a number of impairments, including hypertension, obesity, severe intercostal neuritis, osteoarthritis of the lumbosacral and cervical spines, and synovial hypertrophy of the knees with mild degenerative arthritis. The ALJ found, however, that plaintiff's impairments did not significantly limit her ability to perform basic work-related functions. It is clear that the ALJ relied on medical reports which periodically evaluated certain of plaintiff's conditions in formulating this finding. However, I am unable to determine whether the ALJ considered the combined and cumulative effects of plaintiff's multiple impairments. Accordingly, I must remand this matter to the ALJ for further consideration on this issue. On remand, the ALJ should carefully consider whether the evidence is sufficient to support a conclusion that plaintiff's multiple impairments, considered cumulatively and in combination, preclude plaintiff from performing her past relevant work.

Wherefore, I will enter an order denying the motions of plaintiff and defendant, and remanding this case for further proceedings in accordance with this memorandum.