**Filippo MILAZZO**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services.**

**Civ. A. No. 81-1806.**

United States District Court,
E. D. Pennsylvania.

Dec. 30, 1981.

Filippo Milazzo, pro se.

Peter F. Vaira, U. S. Atty., John T. Farrell, Jr., Sp. Asst. U. S. Atty., E. D. Pa., Philadelphia, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Filippo Milazzo has commenced this action to review a final decision of the Secretary of Health and Human Services ("Secretary") denying his claim to a period of disability and to disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423. The Secretary has moved for summary judgment.

1. On or about December 17, 1980, Mr. Milazzo's attorney withdrew his representation. (Tr. 15).

2. Section 205(g) provides for judicial review by a district court of all final determinations regarding disability benefits, specifying that

Mr. Milazzo, a gentleman born in Italy on August 9, 1921, reads, writes and speaks very little English. His education, received in Italy, is only through the fifth grade. From 1969 through 1977, Mr. Milazzo was employed as a clothing presser by the After-Six corporation. This is the only occupation he has known, working previously in Italy as a presser in a tailor's shop. In 1977, Mr. Milazzo left his employment complaining that he suffered from hypertension, cardiac insufficiency, emphysema and bad nerves. He initially filed for disability benefits on October 24, 1979, claiming that he had been disabled as a result of these impairments since June 29, 1977. The Social Security Administration denied the application both initially and upon reconsideration. On October 7, 1980, a hearing *de novo* was held before an Administrative Law Judge ("ALJ"). Mr. Milazzo and his sister, Salvatrice Milazzo, appeared and testified. Mr. Milazzo testified through an Italian interpreter and was, at that time, represented by counsel.[1] A decision, again denying benefits, was rendered on December 4, 1980. The ALJ's decision became the final decision of the Secretary when, on February 13, 1981, the Appeals Council of the Social Security Administration refused Mr. Milazzo's request for review. This appeal followed.

Mr. Milazzo's *pro se* complaint is filed pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).[2] Section 205(g) provides that the findings of the Secretary as to any fact shall be conclusive on appeal "if supported by substantial evidence." The Third Circuit Court of Appeals has defined substantial evidence to mean

more than a mere scintilla. It means such relevant evidence as a reasoning mind might accept as adequate to support a conclusion.

[T]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g).

*Smith v. Califano,* 637 F.2d 968, 970 (3d Cir. 1981), quoting from *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981); *Lewis v. Califano,* 616 F.2d 73, 76 (3d Cir. 1980).

Two requirements must be satisfied to qualify for benefits under section 223: First, the claimant must suffer from a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted, or can be expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). Next, the claimant's impairment must be so severe as to prevent him from engaging either in his previous work or, considering his age, experience, education or work experience, "in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The ALJ found that Mr. Milazzo suffered from hypertension and periodic episodes of chest and shoulder discomfort. He noted, however, that both conditions were under control with medication, with "no evidence of significant cardiovascular or pulmonary pathology." (Tr. 25). The ALJ also found insufficient evidence of such pain as would have precluded Mr. Milazzo's return to his former duties. Finally, the ALJ found that claimant possessed the residual functional capacity to resume pressing clothes and was, therefore, not suffering from a "disability" within the meaning of the Social Security Act.

## I.

The specific issue in this proceeding is whether these findings are supported by substantial evidence. Mr. Milazzo has claimed disability from a number of ailments. In particular, he complains of constant chest pain and difficulty breathing. The ALJ denied Mr. Milazzo's application, finding that the plaintiff's impairments were not sufficiently severe to be disabling. The ALJ's evaluation of the medical evidence supporting this determination is found in the following excerpt from the decision:

Claimant has hypertension, but this condition is generally stable and adequately controlled with medication with no evidence of significant end organ damage or pathology. Similarly, although claimant alleges episodes of chest discomfort, there is no evidence of any cardiovascular pathology or abnormality on examination, or in clinical studies, including chest x-ray and EKG. The general consensus of the medical record is that the claimant's periodic chest discomfort is musculoskeletal in origin. While claimant alleges breathing difficulty, examination also reveals no significant pulmonary dysfunction and claimant's lungs are clear. Studies, including pulmonary function examination, reveal no significant pathology. The claimant's periodic episodes of anxiety are adequately controlled with medication, including valium. There is no basic conflict in the medical record as all treatment sources indicate a paucity of objective evidence which would substantiate claimant's subjective level of symptomatology.

(Tr. 23–24). This cursory review, however, excludes certain medical evidence which, on examination of the record, I find relevant.

In a report dated December 8, 1978 (Ex. 10, Tr. 81), Dr. Mediano concluded that there was a fissure sign in plaintiff's left lung which, the doctor opined, was consistent with a diagnosis of thrombo-embolic disease. However, Dr. Mediano found good perfusion of plaintiff's right lung. On December 28, 1978, Dr. Mediano again examined plaintiff and, although noting that there was no active lung disease, indicated "no marked change since the study of 12–8–78." (Tr. 84). Plaintiff was also examined on December 28, 1978 by Dr. Martin Lachman. Although Dr. Lachman found improvement in the left lung, he noted a perfusion defect at the right base and commented that "[t]his would be due to chronic obstructive pulmonary disease or possibly to an additional pulmonary embolis." (Tr. 82). These reports were not mentioned in the ALJ's decision. On February 8, 1979, Dr. Singer diagnosed hypertensive cardiovascular disease and chest and shoulder pain

which he diagnosed as probably being secondary to fibromyositis and/or bursitis. (Ex. 11, Tr. 85). The ALJ offered no comment on the probative value of either of Dr. Singer's findings. The record also contains a report of Dr. Giaccomo Vigilanza Coretto dated October 15, 1979. Dr. Coretto had examined plaintiff in Venezuela and had made the following diagnoses: arterial hypertension; cardiac insufficiency; slight pulmonary emphysema; and exaggerated emotiveness. (Ex. 12, Tr. 88). The ALJ offered no specific reason why Dr. Coretto's diagnoses were rejected. On January 10, 1980, Dr. Matez reported that Mr. Milazzo "is under my care for medical problems and is unable to work at this time." (Ex. 15, Tr. 93). The ALJ summarily dismissed Dr. Matez's conclusion, commenting that the doctor's opinion "is not adequately supported by findings from examination or clinical studies...." (Tr. 24). According to the ALJ, the opinion was "largely based on the claimant's subjective symptomatology." (Tr. 24). However, in a report dated February 11, 1980, Dr. Matez indicates that he had examined the plaintiff on January 10, 1980 and diagnosed musculoskeletal costrochondral discomfort. (Ex. 14, Tr. 92). In addition, Dr. Matez suspected cardiac problems and recommended a complete cardiac evaluation by a competent specialist.

The Third Circuit Court of Appeals has recently and emphatically recognized that

there is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record....

*Cotter v. Harris, supra,* 642 F.2d at 706. This need has not been met in this case. The ALJ's review of the medical evidence of record amounts only to a series of assertions and conclusions. There are no references to specific medical reports supporting or contradicting these assertions. Indeed, as I have indicated, the ALJ's review provides no discussion and offers no attempt to reconcile relevant probative evidence that conflicts with his conclusions. Under these circumstances, I have no basis upon which to assess either the accuracy of the ALJ's conclusions or the propriety of his reasons for rejecting relevant evidence.

The ALJ's decision in this case does not reflect the level of careful administrative review contemplated in and required by *Cotter.* Accordingly, I conclude that the finding that there is "insufficient evidence of any impairment or impairments of sufficient severity and duration as would constitute a disability under the Social Security Act" is not supported by substantial evidence.

II.

■ The ALJ found that Mr. Milazzo possessed the residual functional capacity to return to his former job duties as a clothing presser. Specifically, although the ALJ found that plaintiff's residual functional capacity had been reduced to the extent that he was unable to engage in work involving heavy manual labor, lifting or carrying, the ALJ determined that "claimant's former job duties ... can be performed within the functional restrictions described above." (Tr. 25).

In cases where a claimant is no longer working, the Secretary must assess the claimant's "residual functional capacity and the physical and mental demands of the work [the claimant has] done in the past" in determining whether the claimant is disabled. 20 C.F.R. § 404.1520(e). An individual's "residual functional capacity," is a measure of what that individual can still do despite his limitations. 20 C.F.R. § 404.1545(a). The measure considers the capacity for a variety of functions, including, *inter alia,* the "ability to do physical activities such as walking, standing, lifting, carrying, pushing, pulling, reaching, [and] handling." 20 C.F.R. § 404.1545(b). Although described "as a medical assessment," the regulations also provide that the claimant's descriptions and observations regarding his own work limitations may be used. When used, these descriptions and observations must be considered along with the claimant's medical record. 20 C.F.R. § 404.1545(a).

In this case, Mr. Milazzo's testimony regarding his physical inability to perform his past duties as a clothing presser is uncontroverted:

> I was always on my feet. I used a steam presser. I sweated a lot and had to breath [sic] the steam fumes. I pressed hundreds of pieces a day. I had to carry things weighing 8–10 lbs. This even gave me chest pain. Pressing was very heavy work.

(Plaintiff's Disability Report. Ex. 8, Tr. 71). In the same report, Mr. Milazzo also complains of difficulty in breathing "which especially affects me when I walk, [and] go up and down stairs...." (Tr. 67). However, the ALJ's evaluation of plaintiff's residual functional capacity, and thus, his conclusion that plaintiff can return to his past work, ignores these subjective descriptions of capacity.

More important, the administrative proceedings below omit the specific assessments required under the regulations, viz.: (1) the physical and mental demands of the claimant's past work; and (2) the claimant's present ability (evaluated on the basis of medical evidence) to do either that work or the basic physical activities—walking, standing, lifting, etc.—specified by 20 C.F.R. § 404.1545(b), supra. The ALJ's decision simply asserts, without reference to medical reports,[3] that "the medical record indicates essentially normal ranges of motion." (Tr. 24). Otherwise, the ALJ's opinion and the transcript of plaintiff's hearing are innocent of any explication of or inquiry into the physical demands of Mr. Milazzo's past work or his present limitations related thereto.

In sum, in light of the ALJ's failure specifically to consider (1) the physical demands and duties of plaintiff's past work as a clothing presser and plaintiff's abilities, on the basis of medical evidence, to perform those duties or other physical activity; and (2) subjective descriptions of plaintiff's own physical limitations, I find that the Secretary has not conclusively established that plaintiff possesses sufficient residual functional capacity to return to his former job duties as a clothing presser.

### III.

Finally, on remand, the Secretary must give serious consideration to plaintiff's subjective complaints of pain. The record, both in the medical reports and in Mr. Milazzo's application and reapplication for benefits, is replete with complaints of severe and constant chest pains, and "fairly constant pain in the temples of my head; [and] dizziness." (Ex. 8, Tr. 67). See Tr. at 75, 85, 90 and 92. At the hearing, plaintiff testified that he mostly stays at home, and is often bed-ridden as the result of the pain and pressure in his chest. (Tr. 42–43). Plaintiff's sister, Salvatrice Milazzo, also testified that plaintiff complained "that he had pains in his lungs and pains in the center of his chest in his heart." (Tr. 47). The ALJ, however, found that there was insufficient evidence of pain to preclude plaintiff from returning to his past duties as a presser. The ALJ therefore determined that plaintiff's complaints of pain were incredible.

This court has held that "evidence of pain, even though unaccompanied by objective medical data, can provide a basis for a finding of disability." Rodriguez v. Schweiker, 523 F.Supp. 1240, at 1244 (E.D. Pa.1981); King v. Secretary of Health, Education and Welfare, 481 F.Supp. 947, 948 (E.D.Pa.1979). Thus, even where a claimant's subjective complaints are not fully confirmed by objective evidence, the Secretary is bound to give those complaints serious consideration. Smith v. Califano, supra, 637 F.2d at 972. To the limited extent that plaintiff's subjective complaints are evaluated by the ALJ in this case, the evaluation rests solely on the basis of the medical evidence:

> ... [A]lthough claimant alleges episodes of chest discomfort, there is no evidence

---

**3.** Nor do I find medical reports in this record testing and evaluating plaintiff's ranges of motion.

of any cardiovascular pathology or abnormality on examination, or in clinical studies, including chest x-ray and EKG. The general consensus of the medical record is that the claimant's periodic chest discomfort is musculoskeletal in origin.... [A]ll treatment sources indicate a paucity of objective evidence which would substantiate claimant's subjective level of symptomatology.

(Tr. 23–24). Indeed, the ALJ noted that: *Statements of the applicant, including his own description of his impairments/symptoms are alone, insufficient to establish the presence of a physical or mental impairment.* (Emphasis supplied).

(Tr. 23).

Evaluation of plaintiff's subjective complaints of pain rests upon an improper basis. The ALJ has therefore failed to accord those complaints the "serious consideration" required by *Smith*. Accordingly, remand to the Secretary is appropriate for a proper determination regarding the credibility of plaintiff's testimony of pain.[4]

Wherefore, I will enter an Order accompanying this memorandum denying the Secretary's motion for summary judgment and remanding this cause for further administrative proceedings consistent with this memorandum.

---

4. This is not to intimate that the ALJ's conclusion that plaintiff's subjective complaints of pain are not substantiated by the objective evidence of record is otherwise proper. Indeed, at least one medical report submitted by Dr. Matez confirms the existence of pain, "musculoskeletal in origin." (Ex. 14, Tr. 92). *See also,* report of Dr. Singer (Ex. 11, Tr. 85), diagnosing "chest and shoulder pain probably secondary to fibromyositis and/or bursitis." Moreover, the ALJ's finding of insufficient evidence of disabling pain rests, in part, on the determination that plaintiff receives "significant relief of his discomfort" with the use of Valium. (Tr. 24). I am doubtful of the propriety of this determination as well. In this regard, the ALJ refers to a medical report submitted by Dr.

Matez (Ex. 14, Tr. 92). This report indicates that on December 4, 1979, plaintiff complained that he received no relief from Isodril—a nitroglycerin-base medication—and, at that time, told Dr. Matez that "he felt better when he took Valium." On January 10, 1980, Dr. Matez recommended the continued use of Valium. However, plaintiff refused, instead requesting Librium because "he had taken this previously and had gotten some relief." (Tr. 92). Although there is some basis in this report to conclude that plaintiff receives some relief from medication, the report does not conclusively establish that the relief is of such "significance" as to permit plaintiff to resume his normal range of functions as a clothing presser.