**Lorraine SIMMS**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services.**

**Civ. A. No. 82–1414.**

United States District Court, E.D. Pennsylvania.

Dec. 10, 1982.

San S. Angell, Community Legal Services, Philadelphia, Pa., for plaintiff.

Stanley M. Weinberg, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

### LOUIS H. POLLAK, District Judge.

This action is brought under 42 U.S.C. § 405(g) to review a final decision of the Secretary of Health and Human Services ("Secretary") denying plaintiff's claim for disability benefits under Title XVI of the Social Security Act.

### I.

The plaintiff is a forty-nine-year-old woman with a seventh-grade education who has work experience as a waitress, counter person, cashier, and maid. Within the past few years, she has done packing work in a sheltered workshop. She filed applications for supplemental security income on June 6, 1980 and on November 10, 1980,[1] alleging disability beginning in 1972. The alleged disability results from arthritis and emotional problems. She was denied supplemental security income benefits initially and on reconsideration by the Office of Disability Operations of the Social Security Administration after the Pennsylvania State Agency determined that she was not disabled within the meaning of the Social Security Act.

An Administrative Law Judge ("ALJ"), before whom plaintiff, her attorney, her daughter, and a vocational expert appeared, considered the case *de novo*. In a decision issued on October 30, 1981 he denied plaintiff's application, finding that she retained the functional capacity to perform her previous work. (Tr. 28.) On February 22, 1982, the Appeals Council affirmed the ALJ's decision; it therefore became the final decision of the Secretary. In this appeal from the Secretary's decision, the parties have filed cross-motions for summary judgment.

### II.

The scope of judicial review of the Secretary's decision is defined by the Social Security Act. *See* 42 U.S.C. § 405(g). The only issue before the court is whether the Secretary's findings of fact are supported by substantial evidence. Substantial evidence, as the Third Circuit has recently observed, has been defined by the Supreme Court as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoted in Smith v. Califano,* 637 F.2d 968, 970 (3d Cir.1981).

To be eligible for supplemental security income, an applicant first must establish that she suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 1382c(a)(3)(A). Second, she must show that her impairment is sufficiently severe to prevent her from engaging either in her previous work or, in view of her age, education, and work experience, "in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 1382c(a)(3)(B). *See Milazzo v. Schweiker,* 528 F.Supp. 1099, 1101 (E.D.Pa.1981).

In this case, the ALJ found that the plaintiff suffers from anxiety, depression, and degenerative arthritis. He found her subjective complaints either not credible or without significant effect on her residual functional capacity. In concluding that she is not under a disability as defined by the Social Security Act, he found that her impairments do not prevent her from performing her "past relevant work," which does not involve high stress or "medium or heavy" exertion. (Tr. 28).

The ALJ found it "convenient" to separate the medical evidence into two categories: "that relating to [plaintiff's] emotional problems and that relating to her orthopedic problems." (Tr. 23.) He first evaluated the evidence concerning her "musculoskeletal problems." This evidence consisted primarily of medical reports from

---

1. The second application was considered a duplicate application.

Dr. Parviz Kambin (Exhibit 21) and Dr. Ferdinand Fetter (Exhibit 20). Dr. Fetter was of the opinion that the outlook for her return to work was very poor (Tr. 154); Dr. Kambin, however, felt that although it was reasonable for her to experience pain with strenuous activity, she should be able to tolerate a "less tasking type" of work. (Tr. 163.)[2] The ALJ chose to accord greater weight to Dr. Kambin's conclusion than to Dr. Fetter's in finding that plaintiff could return to her former work activity. He made this choice because Dr. Kambin is an orthopedic surgeon and Dr. Fetter is an internist. (Tr. 27.) *See Cotter v. Harris,* 642 F.2d 700, 706 (3d Cir.1981) (requiring the ALJ to explain clearly the basis for crediting one medical conclusion rather than another). However, the ALJ failed to explain adequately his rejection of plaintiff's subjective complaints, which were supported by Dr. Fetter's findings, as not credible. It is well-settled that subjective complaints will support a claim for disability benefits. *See Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir.1971). The ALJ's suggestion that plaintiff's occasional work in her garden undercuts her argument that she is disabled is contrary to the law in this Circuit. *See Smith,* 637 F.2d at 972 (sporadic and transitory nature of plaintiff's activities demonstrated not his ability but

his inability to engage in substantial gainful activity).

The ALJ next considered the evidence relating to plaintiff's emotional problems, recognizing that a clear difference of opinion existed among the various experts whose statements are included in the record. In reaching his conclusion that one of those opinions—that of Dr. James Nelson—should be accorded "great weight," the ALJ offered no reason other than that he considered Dr. Nelson "an unbiased independent source of psychiatric evaluation. . . ." (Tr. 27.)[3]

■ Although Dr. Nelson's report does provide some support for the ALJ's conclusion that plaintiff's emotional problems are not disabling, the ALJ failed to explain the basis for his rejection of conflicting evidence from other sources. Under *Cotter v. Harris, supra,* the ALJ is required to provide such an explanation. Moreover, several of the reports accorded little or no weight by the ALJ came from Horizon House, an agency that has provided treatment to the plaintiff for several years.[4] Earlier reports had been provided by another agency at which plaintiff had been treated—the CATCH Community Mental Health/Mental Retardation Center. Those reports concluded that plaintiff was at most capable of volunteer work or a small part-

---

2. The last line of Dr. Kambin's report reads: "This patient gives a history of psychiatric disorder and treatment, and her rehabilitation for sedentary type of work may be difficult." (Tr. 163.)

3. The ALJ did not mention plaintiff's testimony about her visit with Dr. Nelson. According to plaintiff, the doctor spent only seven minutes with her, during which time some of his attention was diverted by a phone call from his son and a conversation with his secretary. His "unbiased" report contains the following two paragraphs:

> I asked Mrs. Simms if she had tried employment and I mentioned certain job areas in which I knew there were shortages and for which I knew she was qualified. Yet she had worked in a restaurant for a few weeks but the people for whom she worked were too demanding. Yet she had worked as a domestic worker for a family but "they wanted me to carry a vacuum cleaner up to the third floor and I have a bad back." I suggested to

> her that jobs paying $175.00 a week as a domestic worker [sic] and that there were certainly some of these jobs that she would be able to do in spite of the fact that she had "a bad back."
> This woman may be suffering from manic-depressive illness manifested by some degree of emotional instability and by recurrent episodes of manic-depressive psychosis. However, at the present time, she is in excellent remission, she is not psychotic and she is not even emotionally unstable. *She is well able to accept any unskilled jobs which now go begging and it is unfortunate that she is being maintained on the taxpayers' dollars when she could be earning a living for herself.*

(Tr. 172–173) (emphasis added).

4. *See* Exhibit 24 (report from Horizon House counselor); Exhibit 26 (Horizon House Psychoeducational Evaluation); Exhibit 27 (letter from Horizon House consulting psychiatrist).

time job;[5] she has been doing some packing work at Horizon House's sheltered workshop. In addition to not explaining the diminished weight he accorded these apparently knowledgable sources, the ALJ seems to have ignored the principle that the opinion of the plaintiff's physician is entitled to great weight. *Twardesky v. Weinberger,* 408 F.Supp. 842, 846 (W.D.Pa.1976).

█ An additional error calls for remand. The law requires that "where there are several illnesses suffered simultaneously by the claimant, the combined effect of the impairment must be considered before the Secretary denies the payment of disability benefits." *Bittel,* 441 F.2d at 1195. This is for the reason that the Social Security Act "seeks to administer relief to the whole man and not simply to serve as a vehicle for the separate clinical analysis of individual ailments." *Champion v. Califano,* 440 F.Supp. 1014, 1018 (D.D.C.1977). Here, however, not only did the ALJ fail to consider the "combination and interrelation of the various individual ailments," *id.,* but he also found it "convenient" to separate the two ailments and deal with them on an individual basis.

Accordingly, the parties' cross-motions for summary judgment are denied, the Secretary's decision is vacated, and the case is remanded for reconsideration consistent with this opinion.

---

**5.** Exhibits 19, 22 & 23.

Dr. Donald Jennings, a vocational expert, testified at the hearing that the plaintiff's psychological impairment would preclude employment. However, in response to a hypothetical question that assumed the psychological problems to be in remission, Dr. Jennings stated that an individual meeting plaintiff's description could return to her former job. Concluding that plaintiff's psychological impairment is "in at least partial remission," the ALJ "accepted" Dr. Jennings opinion in support of his decision that plaintiff is not disabled. (Tr. 27, 80–84.)