**Jamie ROSARIO, Plaintiff,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 92–203 ERIE.**

United States District Court, W.D. Pennsylvania.

Dec. 28, 1992.

Douglas W. Reed, Pittsburgh, PA, for plaintiff.

John J. Trucilla, Asst. U.S. Atty., Erie, PA, for defendant.

## OPINION

COHILL, District Judge.

This case is before us on appeal from a final decision by the defendant, Secretary of Health and Human Services (the "Secretary"), denying James Rosario's claim for Supplemental Security Income ("SSI") and disability insurance benefits ("DIB"). The parties have submitted cross motions for summary judgment. The plaintiff has also asked us to remand the cause to the Secretary for further proceedings. For the reasons stated below, we will deny plaintiff's motion for summary judgement or remand and grant the defendant's motion.

## I. PROCEDURAL HISTORY

The plaintiff applied for DIB and SSI under Titles II and XVI, respectively, of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–433, §§ 1381–1383c (West 1992), in 1990. The Pennsylvania Bureau of Disability Determination denied the plaintiff's application initially and on reconsideration. Tr. 67–116, 121–34. A hearing was held in Erie, Pennsylvania before an Administrative Law Judge ("ALJ"), and on August 16, 1991 he determined that the plaintiff was not eligible for DIB or SSI. Tr. 16. The ALJ reasoned that even though Mr. Rosario is unable to perform his past work as a farm laborer, he has the residual functional capacity to perform a significant number of sedentary and light exertional jobs. Tr. 8–16, Finding Nos. 5–11. The ALJ therefore denied the plaintiff's claims because he is ineligible for DIB or SSI.

The Plaintiff requested review of this decision by the Appeals Council of the Social Security Administration which found no basis for granting Mr. Rosario's request. Tr. 3. The ALJ's August 16, 1991 determination ("ALJ Decision"), therefore, is a final decision of the Secretary and may be reviewed by this Court.

## II. FACTS

The plaintiff was forty three years at the time of the ALJ Decision. Tr. 37, 135. He is five feet, eleven inches tall and weighs one hundred sixty-nine pounds. Tr. 159. Mr. Rosario completed the sixth grade and attended schools in both Puerto Rico and New York City. Tr. 37. Although Spanish is his first language, tr. 158, Mr. Rosario understands and speaks English. Tr. 37. He receives welfare benefits and a food stamp allowance. Tr. 38. He currently maintains a medication regimen of Voltaren and Tylenol. Tr. 38, 170.

From 1968 until 1986, Mr. Rosario was employed as a laborer in the farm and textile industries, which required him to bend and stand for long periods of time. Tr. 166–67, 172. While employed in his last job as a farm laborer, Mr. Rosario injured his back when he fell off a ladder on October 24, 1986. Tr. 29, 142, 146, 166–67, 171. Almost one month later Mr. Rosario sought medical attention for a testicle problem and flank pain. Tr. 177–78. He was told to seek the advice of a urologist and was prescribed Dolobid for discomfort. Tr. 177.

Mr. Rosario then returned to work. Plaintiff's Brief at 4. The next time he sought medical treatment was in January 1989 when he claimed he had low back pain resulting from a work-related injury. Physicians prescribed pain medication after finding sclerosis of the joints at the lumbosacral junction due to an old trauma. Tr. 201–202. Mr. Rosario's lumbar spine X-rays indicate a "good" range of back motion, a mild deformity of a part of his vertebra; he was prescribed medication for his discomfort. Tr. 190, 201, 212.

Mr. Rosario returned for treatment eight months later on September 5, 1989, because he had been suffering low back pain radiating into his left leg. Dr. Karl Frankovitch prescribed Voltaren, an anti-inflammatory medication, which only slightly improved Mr. Rosario's condition. Tr. 189–91, 212. He

was admitted to Hamot Medical Center in Erie, Pennsylvania on October 3, 1989. After a myelogram was conducted on October 13, 1989, Mr. Rosario was diagnosed as having a herniated disc in his lower back. Tr. 187, 189, 191–99. Surgery was scheduled for December 1989. Tr. 186, 188. Mr. Rosario canceled his surgery to visit Puerto Rico. Tr. 185. In February 1990 a physician noted that Mr. Rosario exhibited decreased reflex response in the S1 distribution on the left and a decreased great toe extensor strength. Tr. 185. In the meantime Mr. Rosario had rescheduled the surgery for March 23, 1990. Tr. 185.

Apparently Mr. Rosario canceled this second scheduled surgery and sought a second opinion which resulted in a conservative approach to his ailment. Tr. 184, 135–36, 211. His insured status for purposes of DIB entitlement then expired in June 30, 1990. Tr. 135–36. Later that year, on September 20, 1990, Mr. Rosario described his leg discomfort as "much better" and was given epidural steroid injections for his back pain. Tr. 31–32, 209–210.

Orthopedic surgeon Dr. George Hochreiter examined Mr. Rosario twice in 1990. On March 21, 1990, Dr. Hochreiter found no acute distress and no evidence of motor, reflex or sensory deficits. Tr. 179–81. The doctor noted that Mr. Rosario walked slowly with some difficulty with toe-heel walking on the right side, but that he had exhibited extreme loss of range of back motion. The doctor's conclusion after the initial consultation was that Mr. Rosario's disc herniation diagnosis was founded in history rather than in "hard neurologic findings." Tr. 179–80.

After a second examination on December 8, 1990 the same doctor found Mr. Rosario "healthy," with "excellent" muscle development in both his legs, despite his claims of extreme pain and functional limitations. His straight leg raising test was negative for pain in both legs, but Mr. Rosario still claimed that his back motion was severely limited and that he suffered much discomfort. Tr. 205–07. Mr. Rosario toe-heel walked for four feet and had to stop after becoming anxious. Dr. Hochreiter found that Mr. Rosario could perform straight leg raising exercises to the ninety degree point. The doctor further concluded that Mr. Rosario was a poor surgical candidate and that Mr. Rosario's symptomatic complaints were disproportionate to the clinical evidence. Tr. 205–206.

Mr. Rosario explained at the June 7, 1991 hearing that he had constant back discomfort, as well as weakness, discomfort and numbness in his left leg. Tr. 32–34. He stated that this pain hindered his sleeping, bending, and climbing steps. Tr. 33–35. To alleviate the discomfort, Mr. Rosario took Voltaren and acetaminophen and applied a heating pad. Tr. 34–35, 38–39. At the hearing he further testified that he did cancel the first scheduled surgery due to the risks involved but that the second surgery was canceled by his physicians. Tr. 30, 35–36. He claims that he tried to work in 1987 or 1988 but stopped when he injured his back by bending. Tr. 29–31. He also testified that his physician told him not to lift anything over ten pounds in weight, Tr. 37, and that he could only sit for one-half hour intervals. Tr. 33, 37. Mr. Rosario claims that his pain causes him to have difficulty getting out of bed and navigating stairs. Tr. 34, 42. He also states that he can only perform minimal housework, such as washing dishes and fixing something to eat. Tr. 33, 40, 41. Mr. Rosario claims that he can sit for just one-half hour before his pain forces him to change his position. Tr. 33.

Mr. Rosario's girlfriend, Linda Adams, corroborated that he suffers back pain. She explained that Mr. Rosario used a cane when he went for walks, Tr. 40, and found walking or dressing difficult when his back was "real bad." Tr. 40, 42. Ms. Adams also testified that she gave Mr. Rosario additional medication for discomfort. Tr. 40, 42.

The Administrative Law Judge based his decision to deny the plaintiff benefits under SSI and DIB on a variety of factors. The ALJ doubted the veracity of Mr. Rosario's claims that he could only watch television and go to the bathroom. The ALJ noted that:

"the claimant has failed to provide documentation of any treatment from treating sources since September 1990 of any treatment … and that his treatment for back-

related complaints has been inconsistent and marked by long periods when he received no treatment at all or failed to comply with treatment recommendations." Tr. 13. The ALJ also noted that the medical record failed to support Mr. Rosario's claims that he must limit his activities. Tr. 13. As to the testimony of the plaintiff's girlfriend that he suffered severe limitations on his mobility, the ALJ found that her testimony, as well as Mr. Rosario's, was not credible and that it was contradicted by a lack of evidence of neurological abnormalities, muscle atrophy or other evidence of severe pain. Tr. 14.

Despite the evidence of physical limitations, the ALJ concluded that Mr. Rosario retained the ability to perform sedentary work. Tr. 14. The ALJ concluded that Mr. Rosario can stand and walk for up to two-thirds of the workday. Tr. 14. He also explained that even accepting as true the assertion that Mr. Rosario cannot carry or lift objects which weigh over ten pounds, Mr. Rosario can still perform unskilled, sedentary, and some light work. Tr. 14.

### III. *STANDARD OF REVIEW*

The standard of review in social security cases is whether substantial evidence exists in the record to support the Secretary's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir.1989). Additionally, the Secretary's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir.1979).

To be eligible for social security disability benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir.1986).

The Secretary has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520.

The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment. *Livingston v. Califano,* 614 F.2d 342, 345 (3d Cir.1980). Once the claimant meets this burden, the burden of proof shifts to the Secretary to show that the claimant can engage in alternative substantial gainful activity. *Id.* The main question in this case is whether the Secretary's decision was supported by substantial evidence. *Dobrowolsky v. Califano,* 606 F.2d 406 (3d Cir.1979). The Supreme court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). A careful examination of the evidence relied upon by the ALJ in this case demonstrates that his finding that Mr. Rosario can perform light or sedentary work meets this standard.

### IV. *DISCUSSION*

▪ The ALJ's decision explains that there is some ambiguity as to whether it was Mr. Rosario or his physicians who decided to cancel both back surgeries. At the outset, Mr. Rosario argues that we should adopt a Tenth Circuit standard that the denial of benefits was not supported by substantial evidence, absent evidence that the rejected back surgery was expected to restore the claimant's ability to work. Plaintiff's Brief at 9. He cites *Weakley v. Heckler,* 795 F.2d 64, 65 (10th Cir.1986), which held that once a claimant demonstrates an impairment and surgery has been recommended, the Secre-

tary has the burden of showing that (1) the treatment at issue is expected to restore the claimant's ability to work; (2) the treatment was prescribed; (3) the treatment was refused; (4) the refusal was without justification.

We note that the Third Circuit has neither adopted nor rejected the *Weakley* test. Even if we were bound by the standards in another federal circuit, Mr. Rosario's arguments fail to persuade us. First, according to the *Weakley* court, a condition precedent to application of the four-part burden placed on the Secretary is that the impairment has been demonstrated. *Id.* The ALJ found that Mr. Rosario "does *not* have an impairment or combination of impairments" as required by the Act. Tr. 15. (emphasis added). Second, the ALJ's decision addressed the surgery cancellations in order to shore up his finding that Mr. Rosario was not a credible witness. We therefore need not address whether the denial of benefits based on the refusal to undergo surgery is proper. This was not the reason for the ALJ's denial of benefits.

■ The plaintiff also asks us to consider his limited understanding of the English language, in addition to the inequality of the physician-patient relationship. We sympathize that Mr. Rosario may have more trouble than the average person in understanding his physicians, but this has very little to do with his ability to work at light or sedentary jobs, or with the issue of whether the evidence considered by the ALJ was substantial enough to warrant denial of benefits.

■ The ALJ determined that Mr. Rosario, although unable to perform his past relevant work as a farm laborer, was able to perform various sedentary jobs and some light work. Sedentary work can include lifting up to ten pounds and occasionally lifting or carrying of articles such as files, ledgers and small tools. Sedentary jobs mainly involve sitting and a small amount of walking. 20 C.F.R. §§ 404.1567(a), 416.967(a) (1992). We note that light work can involve frequent lifting or carrying of objects up to twenty pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b) (1992). The ALJ stated that Mr. Rosario has the residual functional capacity to per-

form such work so long as it excluded standing and walking for more than two-thirds of the workday, lifting and carrying more than ten pounds occasionally, prolonged sitting without changing position, repetitive bending, or climbing. Tr. 15.

■ The plaintiff argues that the ALJ's determination that the plaintiff could perform this kind of work was erroneous given the amount of pain he suffers. Plaintiff's Brief at 11. Subjective complaints of pain are evaluated on the basis of presence of medical signs and findings that could reasonably be expected to produce the degree of complaints alleged. 20 C.F.R. §§ 404.1529, 416.929 (1991). Subjective complaints of pain need not be *fully* confirmed by objective medical evidence in order to be afforded great weight. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981). Yet in the present case, we find *little or no objective* medical evidence to support Mr. Rosario's allegations of pain. The ALJ acknowledged that Mr. Rosario's back condition limits his ability to work. The medical evidence indicates, moreover, that Mr. Rosario has the ability to lift smaller objects and to stand and sit for limited periods of time. His subjective complaints of pain and other symptoms are undermined by the fact that his medical history has large gaps in time for seeking medical treatment, was able to travel to Puerto Rico, and he was never prescribed medication for severe pain. Dr. Hochreiter agreed that Mr. Rosario has a herniated nucleus pulposus, but stated "it is difficult to state what his actual limitations are and are not." Tr. 180. He further stated: "I am not quite certain where you can place the amount of pain in relationship as found by physical findings as in comparison to the complaints that have been given." Tr. 206. Such medical findings cannot reasonably be expected to produce the degree of complaints alleged. In this instance, we believe the ALJ's findings are supported by substantial evidence.

We find, therefore, that the Secretary presented sufficient evidence to support his determination that sedentary jobs and some light work are within Mr. Rosario's medical and vocational abilities. We will therefore

grant the Secretary's Motion for Summary Judgment and deny both the plaintiff's motions.