NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2383
_____

MICHAEL DANIEL O'CONNOR,

                                    Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-10-cv-00093)
District Judge:  Honorable Dennis M. Cavanaugh
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 24, 2012

Before:  FISHER and GREENAWAY, JR., *Circuit Judges*, and JONES,[*] *District Judge*.

(Filed: March 12, 2012)
_____

OPINION OF THE COURT
_____

JONES, *District Judge*.

    An Administrative Law Judge ("ALJ") held that Social Security claimant Michael

O'Connor failed to prove that he was disabled, and the District Court affirmed. *O'Connor*

_____

    [*]The Honorable John E. Jones, III, District Judge for the United States District
Court for the Middle District of Pennsylvania, sitting by designation.

*v. Astrue*, No. 10-0093 (D.N.J. Mar. 30, 2011). O'Connor argues to this Court that the ALJ's decision is not supported by substantial evidence and, further, that the ALJ committed errors of law. We will affirm the decision of the District Court.

## I. Background

### A. *Medical Evidence*

O'Connor is a fifty-two year old male who was forty-seven on the date that he alleges he became disabled. O'Connor worked as an assistant public defender from September of 1985 until the alleged onset of his disability on June 18, 2007. O'Connor has a history of chronic heart problems, specifically ventricular dysplasia and ventricular tachycardia, and he had an antitachycardia defibrillator implanted in 1995 to control his arrhythmia. For years, his condition was controlled by medication and the defibrillator, until the summer of 2007, when O'Connor was twice hospitalized after the defibrillator discharged several times in one day. O'Connor underwent an ablation procedure, and his treating physicians opined that they were generally satisfied with the results.

The following summer, O'Connor was once more hospitalized for defibrillator discharges. In December of 2008, as a result of O'Connor's application for disability benefits, two state medical consultants, Drs. Morris Feman and Howard Goldblas, examined O'Connor and concluded that despite his heart problems, he could engage in activities at the sedentary level, including light chores and occasional lifting.

### B. *Psychiatric Evaluations*

2

In July of 2008, Dr. Ronald Silikovitz conducted an independent psychological evaluation of O'Connor, observing that he was not overtly anxious or depressed. Dr. Francis Hecker also completed a psychiatric review of O'Connor and reported that O'Connor had a mild anxious mood, but retained adequate memory and concentration. Dr. Hecker thus concluded that O'Connor's anxiety was not severe.

### C.    *Procedural History*

O'Connor filed an application for disability benefits on June 5, 2008, alleging an onset date of June 18, 2007. The application was denied, and a hearing was held before the Honorable James Andres, Administrative Law Judge, on April 15, 2009. Both O'Connor and an independent medical examiner, Dr. Martin Fechner, testified. On June 1, 2009, the ALJ issued a decision denying O'Connor's claim, and the Appeals Council denied O'Connor's request for review. Plaintiff filed a Complaint with the District Court on January 7, 2010. The Honorable Dennis M. Cavanaugh issued an opinion affirming the ALJ's decision, finding that it was supported by substantial evidence, and on May 20, 2011, O'Connor filed a timely Notice of Appeal to this Court.

## II. Discussion

A Social Security disability benefits claimant must demonstrate that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve]

3

months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of establishing that he has such a disability. *Id.* § 423(d)(5)(A).

The Social Security Administration employs a five-part procedure to determine whether an individual has met this burden. 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant is engaged in substantial gainful employment; if so, the claimant is ineligible for benefits. *Id.* § 404.1520(a). Next, the ALJ decides whether the claimant suffers from a "severe" impairment; if it is not, the claimant is not eligible for benefits. *Id.* § 404.1520(c). At the third step, the ALJ determines whether the claimant's impairment meets or equals a Listing in Appendix 1 to 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 404.1520(d). If it does, the claimant is automatically entitled to benefits; if it does not, the ALJ proceeds with the analysis. *Id.* In step four, the ALJ decides whether the claimant retains the residual functional capacity (RFC) to perform past relevant work; if so, the claimant is ineligible for benefits. *Id.* § 404.1520(e). Finally, in the fifth step, the ALJ considers whether any work exists which accommodates the claimant's medical impairment, age, education, work experience, and RFC. *Id.* § 404.1520(f). If so, the claimant is ineligible for benefits. *Id.* The ALJ found that O'Connor has a severe impairment, namely "heart disorder, including congestive heart failure, ventricular tachycardia, and status post heart surgery with implantation of a defibrillator," but determined that it does not meet or equal a Listing and that O'Connor retains an RFC for

4

sedentary work. The ALJ concluded that O'Connor could perform his past relevant work as an attorney and, accordingly, did not reach step five.

Where the ALJ's decision is supported by substantial evidence, it must be upheld. 42 U.S.C. § 405(g). Substantial evidence is a deferential standard of review and "means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995)). Substantial evidence is "more than a mere scintilla . . . but may be less than a preponderance." *Woody v. Sec'y of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988). In determining whether the ALJ's finding is supported by substantial evidence, we review the record as a whole. 5 U.S.C. § 706.

O'Connor raises several issues on appeal. He first contends that the ALJ erred in not fully crediting his subjective complaints or the conclusion of his treating physician. O'Connor suggests that the ALJ should have adopted entirely Dr. Mehta's conclusion that he was totally and permanently disabled. He next argues that the ALJ erred in finding that neither his heart condition nor his anxiety disorder meets or equals a Listing. Finally, O'Connor challenges the ALJ's conclusion that he retains the RFC to perform his past work as a public defender. We address each argument in turn.

A.    *Weight of the Evidence*

O'Connor first posits that the ALJ erred in discrediting his subjective complaints and the ultimate conclusion of his treating physician to the extent that both were inconsistent with the remainder of the objective medical evidence. We disagree.

This Court has long held that "[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations omitted). Indeed, "in the absence of contradictory medical evidence, an ALJ . . . must accept the medical judgment of a treating physician." *Jones v. Sullivan*, 954 F.2d 125, 128-29 (3d Cir. 1991). Similarly, "[a]n ALJ must give great weight to a claimant's subjective testimony . . . when this testimony is supported by competent medical evidence." *Schaudeck v. Comm'r of Social Sec.*, 181 F.3d 429, 433 (3d Cir. 1999).

O'Connor contends that his subjective complaints are consistent with the testimony of his treating physician and thus entitled to deference. This conclusion would be correct if it did not ignore the important inquiry of whether other objective medical evidence contradicts his testimony. *See id.* at 433. While O'Connor argues the contrary, his subjective testimony was in fact contradicted by medical evidence, specifically, the conclusions of Drs. Fechner, Feman, Goldblas, Hecker, and Silikovitz, all of whom concluded that O'Connor retains the physical and mental ability to engage in sedentary

work.  Accordingly, the ALJ did not err in limiting the extent to which he credited O'Connor's testimony.

The same is true of the ALJ's decision to discredit Dr. Mehta's conclusion.  Where the opinions of a claimant's treating physician are inconsistent with the physician's own records and contradicted by the opinions of other examiners, the ALJ may decide to give limited weight to the testimony and reports of the treating physician.  *Brown v. Astrue*, 649 F.3d 193, 196-97 (3d Cir. 2011).  The ALJ correctly noted that Dr. Mehta was the only examiner among several to so expansively, and without explanation, conclude that O'Connor was totally disabled.  This broad conclusion is inconsistent with Dr. Mehta's own records and the conclusions of every other physician that has examined the claimant.[1]  Accordingly, we find that the ALJ appropriately weighed the evidence and adequately explained his reasoning for partially discrediting O'Connor and Dr. Mehta.

B.      *The Physical Impairment Finding*

O'Connor next contends that the ALJ erred in finding that his impairment does not meet or equal a Listing in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  O'Connor asserts that the ALJ failed to address whether O'Connor met or equaled Listing 4.05 and

---

[1] Dr. Mehta's conclusion within an unsigned, undated disability form that O'Connor is completely and permanently disabled is internally inconsistent with Dr. Mehta's own notations that O'Connor had "no ventricular tachycardia events since [August 2007] catheter ablation" and that Dr. Mehta is "quite happy with the results of the catheter ablation and . . . hope[s] he would not have any further ventricular arrhythmias."  Tr. at 743.  His conclusions are also inconsistent with those of Drs. Fechner, Goldblas, and Feman, each of whom evaluated O'Connor and concluded that he was able to perform sedentary work.

cites to *Livingston v. Califano*, 614 F.2d 342 (3d Cir. 1981), for its holding that where an ALJ fails to evaluate the *per se* disability Listings, he has not adequately developed the record and the case must be remanded. *See id.* at 345-46. Both the hearing transcript and the ALJ's decision evince, however, that the ALJ did inquire whether O'Connor falls within any of the *per se* categories and, with specific reference to Listings 4.02, 4.04, and 4.05, concluded that he did not. *See* App. at A4.

We further find that the ALJ's conclusion as to Listing 4.05 is supported by substantial evidence. The ALJ concluded that because the medical evidence fails to demonstrate episodes of syncope, or near syncope, O'Connor does not meet Listing 4.05, related to recurrent arrhythmias.[2] O'Connor asserts that he has had a defibrillator since 1995 and has since "suffered continual and frequent episodes of arrhythmias." This contention is supported by the medical evidence. However, as Appellees note, his medical record is devoid of documented arrhythmia accompanied by uncontrolled cardiac syncope or even near syncope as required by the Listing.

20 C.F.R. Part 404, Subpart P, § 4.00F3(b) defines "syncope" as a loss of consciousness or a faint and "near syncope" as a period of altered consciousness not

---

[2] The listing includes "[r]ecurrent arrhythmias, not related to reversible causes, such as electrolyte abnormalities or digitalis glycoside or antiarrhythmic drug toxicity, resulting in uncontrolled, recurrent episodes of cardiac syncope or near syncope, despite prescribed treatment, and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope." Appendix 1 to 20 C.F.R. Part 404, Subpart P, § 4.05.

reaching the level of fainting or unconsciousness. *Id.* Near syncope requires more than "merely a feeling of light-headedness, momentary weakness, or dizziness." *Id.* To wit, during treatment and follow-up visits after the 2007 and 2008 hospitalizations, O'Connor never complained of, and his doctors never observed, any coincident syncope; indeed, on at least one occasion, O'Connor denied any syncope. *See* Tr. at 410-11, 454-57, 700-01. Critically, "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990) (citation omitted). Thus, the ALJ did not err in finding that O'Connor does not meet a Listing.

### C. The Mental Impairment Finding

O'Connor also asserts that the ALJ erred in finding that his anxiety is not severe. He contends that the ALJ's reliance on Drs. Hecker and Silikovitz was misplaced in light of his own testimony. We find these arguments to be without merit.

As previously noted, while a claimant's testimony must be awarded greater weight, if consistent with the evidence, an ALJ may just as readily award it less weight, or reject it entirely, where the claimant's complaints are contradicted by or greatly exceed those documented by objective evidence. *See Schaudeck*, 181 F.3d at 433. Notably, O'Connor presented no medical evidence supporting his complaints as to the severity of his anxiety; he testified, however, that it prohibits him from working at all. The reports

9

of Drs. Hecker and Silikovitz, both concluding that O'Connor's anxiety results in only a mild limitation on his functioning, are the only medical evidence related to this claim. Because O'Connor's subjective complaints are inconsistent with that evidence, the ALJ appropriately exercised his discretion in discrediting O'Connor's testimony.

We further find that the ALJ's ultimate conclusion as to the severity of the mental impairment is supported by substantial evidence. A mental impairment may require a finding of disability if the claimant's ability to engage in substantial gainful activity is substantially affected thereby. 42 U.S.C. § 423(d)(1)(A); *see* Social Security Ruling 85-28. Inherent in such a determination is a finding that the claimant's mental impairment significantly limits his ability to engage in basic work activities, including his abilities to use judgment, respond to supervision, deal with changes in the routine work setting, and understand, carry out, and remember simple instructions. 20 C.F.R. § 404.1521.

The ALJ considered all of these factors and, relying on Drs. Hecker and Silikovitz, concluded that O'Connor's anxiety is not a significant limitation. Dr. Silikovitz reported that O'Connor had a fair prognosis, finding no substantial limitations on his daily life, and noted that his anxiety was controlled and improved by medication. Tr. at 559-63. Dr. Hecker likewise found that O'Connor had only mild limitations on his ability to engage in daily living activities or to maintain concentration and, accordingly, found his condition "not severe." *Id.* at 564, 574. These two medical opinions offer substantial evidence for the ALJ's finding, and accordingly, we will affirm the ALJ's decision.

10

*D.      The Sedentary Work Finding*

Lastly, we address O'Connor's arguments with respect the ALJ's conclusion that, despite his physical impairment, O'Connor retains an RFC for sedentary work and is thus capable of performing his past relevant work as a public defender. As the District Court accurately summarized, an RFC is an "assessment of a claimant's capacity to perform in a work setting despite his impairments" and said assessment must "first, determin[e] whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms; and second, evaluat[e] the intensity, persistence, and limiting effects of the claimant's symptoms." *O'Connor v. Astrue*, No. 10-0093, at 24 (D.N.J. Mar. 30, 2011) (citing 20 C.F.R. § 404.1529). The ALJ found that O'Connor does suffer from medical impairments that could be expected to cause his symptoms, but concluded that O'Connor's testimony with respect to the intensity, persistence, and limiting effects of his symptoms was not credible to the extent it was inconsistent with the objective evidence. After finding that the conclusions of O'Connor's treating physician were not credible as they related to the extent of his impairment, a conclusion we have already found to be appropriate *supra*, the ALJ turned to the opinions of three other physicians in arriving at O'Connor's RFC. Specifically, the ALJ relied upon the opinions of Drs. Fechner, Feman and Goldblas, each of whom concluded that O'Connor retains an RFC for sedentary work.

11

Accordingly, the ALJ's calculation of O'Connor's RFC is amply supported by substantial evidence.

Finally, O'Connor apparently contends that employment as a public defender is not sedentary work. He argues that his career required "high levels of reasoning, math and language skills, beyond the scope of [his] ability," and that his anxiety prohibits him from managing the high stress levels associated with a career as an attorney.

Fatal to O'Connor's argument is the indisputable point that the Dictionary of Occupational Titles, which this Court has permitted and encouraged ALJs to consult in making their RFC determinations, *see Burnett v. Comm'r of Social Sec.*, 220 F.3d 112, (3d Cir. 2000), lists both prosecutors and defense attorneys as sedentary work.[3] *See* DICTIONARY OF OCCUPATIONAL TITLES, §§ 110.107-014, -117-010. As the District Court aptly noted, the duties of a lawyer listed in the Dictionary include "[r]epresent[ing] [a] client in court and before quasi-judicial or administrative agencies of government"

_____

[3] Specifically, the Dictionary defines a "District Attorney" in § 110.117-010 as one who "conducts prosecution in court proceedings in behalf of city, county, state, or federal government: [g]athers and analyzes evidence in case and reviews pertinent decisions, policies, regulations, and other legal matters pertaining to case. Presents evidence against accused to grand jury for indictment or release of accused. Appears against accused in court of law and presents evidence before [judge] or other judiciary and jury." In § 110.107-014, a "Lawyer, Criminal" is defined as one who "specializes in cases dealing with offenses against society or state, such as theft, murder, and arson: Interviews clients and witnesses to ascertain facts of case. Correlates findings and prepares case. Prosecutes, or defends defendant against charges. Conducts case, examining and cross examining witnesses. Summarizes case to jury." Both of these descriptions, while not expressly referencing public defenders, certainly contemplate the same duties and responsibilities as such a position.

12

and said description "plainly encompasses [O'Connor's] responsibilities as an assistant public defender." *O'Connor*, No. 10-0093, at 28. While O'Connor is undoubtedly correct that his profession requires particular reasoning and language skills, he has failed to produce credible evidence evincing that he suffers from an impairment which significantly limits his capacity for these skills. Thus, we will affirm the ALJ's finding that O'Connor is able to perform his past relevant work as an attorney.

### III. Conclusion

For all of the foregoing reasons, we conclude that substantial evidence supports the decision of the ALJ. Accordingly, we will affirm the District Court's order.