**Charles LIVINGSTON, Appellant,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare.**

**No. 79–1563.**

United States Court of Appeals, Third Circuit.

Submitted Nov. 13, 1979.

Decided Jan. 11, 1980.

.As Amended Jan. 16, 1980.

Jane B. Terpstra, William P. Malloy, Legal Aid Society of Mercer County, Trenton, N. J., for appellant.

Robert J. Del Tufo, U. S. Atty., Stephen D. Taylor, Asst. U. S. Atty., Newark, N. J., for appellee.

Before GIBBONS, HIGGINBOTHAM and SLOVITER, Circuit Judges.

### OPINION OF THE COURT

GIBBONS, Circuit Judge.

Charles Livingston appeals from the district court's grant of a motion for summary judgment in favor of the Secretary of Health, Education and Welfare (HEW) in his action for review of the final decision of the Secretary pursuant to section 205(g) and section 1631 of the Social Security Act.[1] Mr. Livingston, on May 5, 1977, filed an application for Disability and Supplemental Security income benefits under titles II and XVI of the Social Security Act, as amended.[2] His claim for disability benefits was denied by the Administrative Law Judge (ALJ), after a hearing at which he waived his right to counsel, because the ALJ found that his impairment was not sufficiently severe to preclude him from engaging in substantial gainful activity within the meaning of the statute. Mr. Livingston filed suit in the district court seeking reversal after the decision of the ALJ became final when it was approved by the Appeals

---

1. 42 U.S.C. § 405(g), § 1383(e) (1976).

2. Social Security Act, §§ 223(d), 1614(a)(3), 42 U.S.C. § 423(d), § 1382c(a)(3) (1976).

Council of HEW. We find that the ALJ failed to develop an adequate record and that the findings below are not supported by substantial evidence.

## I. FACTS

The record discloses the following facts. In 1974, Mr. Livingston was hospitalized for arthritis-related surgery; a rheumatoid nodule was excised from his left elbow. He had developed nodules and "joint pain" in multiple joints. In October 1976, Mr. Livingston had pain, swelling, and increased heat with limitation of motion of the right elbow and left calf and leg. A month later he was hospitalized under the care of Dr. Williams, for deep vein thrombophlebitis, and was discharged with a final diagnosis of deep vein thrombophlebitis of the left leg, bursitis of the right elbow, and a ganglion cyst of the right hand. Periodic follow-up care in the laboratory was recommended. Dr. Williams subsequently noted in his report of May 12, 1977, to the Social Security Administration, that he had treated Mr. Livingston for three months for pain, swelling, and limitation of motion in his hands and knees due to degenerative arthritis. In the June 1977 report, Dr. Williams diagnosed Mr. Livingston as suffering from degenerative arthritis in both knees, a ganglion cyst on the right hand, bursitis in the right elbow, and varicose veins in the left leg.

Finally, in July 1977, Mr. Livingston was examined by Dr. Ryan, a medical consultant for the Social Security Administration and a specialist in rheumatology. Dr. Ryan stated in his report his belief that Mr. Livingston "has rheumatoid arthritis, and . . . is significantly disabled." The report also discloses that Mr. Livingston has some crepitus of the right shoulder, right elbow and knees, another large nodule on the right elbow, abnormal joint findings, and bunion deformity. A positive rheumatoid factor was found in the laboratory studies and other indications of rheumatoid arthritis,

such as erosive changes in the feet and hands, were indicated by the x-rays. Mr. Livingston's chest x-ray was borderline with a possible cardiac enlargement. Dr. Ryan concluded that Mr. Livingston is unable to perform his ordinary occupation of a mason. There is no dispute regarding this fact—that Mr. Livingston is unable to perform his customary occupation. Moreover, each doctor who examined Mr. Livingston has found that he suffers from symptomatic rheumatoid arthritis.

Dr. Raichelson, a second medical consultant for the Social Security Administration, also concluded that Mr. Livingston had "a significant impairment" due to "documented symptomatic rheumatoid arthritis" as substantiated by "abnormal x-ray studies." He recommended that a final determination as to severity be postponed until more detailed information be obtained. This further evaluation was never completed.

In spite of these findings, Dr. Ryan indicated in the vocational assessment sheet that Mr. Livingston could perform several job-related functions.

The other nonmedical evidence and testimony in the record may be briefly summarized. Mr. Livingston is 44 years old and has completed the eighth grade. After Mr. Livingston moved to New Jersey, he was employed as a laborer doing light work for six months and then worked as a mason, which involved heavy work, from 1963 to 1976. This was the extent of the evidence concerning Mr. Livingston's work experience.

Mr. Livingston also testified that he lives with his cousin, does not own an automobile, and therefore does not drive. He testified that he had been advised to walk a mile a day by his doctor and that he was taking "a little tiny pill." No inquiry was made as to what this medication was. There was also evidence that Mr. Livingston receives $178.00 per month from the Trenton City Welfare, which is his only income.[3] It is

3. Indicative of the inadequacy of the proceedings, Mr. Livingston was asked by the ALJ whether this money "[i]s based on disability or

just the fact you need help? A. "Need help." In fact, Mr. Livingston must have been adjudged disabled under New Jersey law because

undisputed that Mr. Livingston meets the earnings requirements of the statute.

Finally, there was testimony of the vocational expert, Mr. Rubin, who testified to the meaning of light and sedentary work as defined by the United States Department of Labor. Mr. Rubin listed what jobs of a light or sedentary nature were available.

## II. THE DUTY OF THE ALJ TO DEVELOP THE RECORD

▮ We note at the outset that we must accept the Secretary's findings as conclusive if they are supported by "substantial evidence." 42 U.S.C. § 405(g) (1976). The claimant satisfies his initial burden of showing that he is unable to return to his previous employment when his subjective claim is substantiated by medical evidence.[4] There is no evidence whatsoever to contradict the fact that Mr. Livingston is unable to return to his previous employment, and the ALJ's findings do not dispute this. Thus, Mr. Livingston has met his initial burden of demonstrating that due to his disability he is unable to return to his initial employment as a mason. Whether or not the burden actually shifts to the Secretary once the claimant has met his burden, there is no doubt that the Secretary must establish that the claimant has the ability to engage in alternative substantial gainful employment activity.[5] If the Secretary is unable, by substantial evidence, to overcome the claimant's prima facie case, a reviewing court may choose to reverse with or without further hearings.[6]

▮ This circuit has recently announced, in a case remarkably similar to the instant case, standards that the ALJ must meet in developing the record. In *Dobrowolsky* we

stated that the ALJ should "assume a more active role when the claimant is unrepresented" and thus has a "heightened" duty of care and responsibility in such instances.[7] The fact that a claimant is unrepresented by counsel and has knowingly waived this right is not alone sufficient for remand. *Hess v. Secretary of HEW*, 497 F.2d 837, 840 n.4 (3d Cir. 1974). However, if it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand,[8] or reversal.

▮ We find, as we did in *Dobrowolsky*, that the claimant was prejudiced by lack of counsel and that the hearing can only be characterized as unfair due to the failure of the ALJ to develop the record.

Most importantly, the fact that Mr. Livingston appears to fall within one of the per se categories for disabilities was never explored at the hearing. The statute defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical . . . impairment . . . which has . . . or can be expected to last for a continuous period of not less than 12 months . . .." 42 U.S.C. § 423(d)(1)(A). The regulations set forth the sequential steps to be followed in making this determination.[9] Once "a determination that an individual is or is not disabled can be made at any step, evaluation under a subsequent step shall be unnecessary." 20 C.F.R. § 404.1503(a) (1979). If an individual's impairment is listed in Appendix 1 of the regulations, "a finding of disability shall be made without consideration of the vocational factors." *Id.* § 404.-

---

otherwise he would have been receiving only $119.00 per month. *See* N.J.Stat.Ann. 44:8–109 (Supp.1979); N.J.Gen.Assis.Manual, Ch. III, Sch. 1, at 43 (Dec.1977).

4. *See Dobrowolsky v. Califano*, 606 F.2d 403 at 406 (3d Cir. 1979); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

5. *See Dobrowolsky v. Califano*, 606 F.2d at 406; *Rossi v. Califano*, 602 F.2d at 57.

6. *See* 42 U.S.C. § 405(g) (1976); *see, e. g., Dobrowolsky v. Califano*, 606 F.2d at 410 (remand for rehearing), *Rossi v. Califano*, 602 F.2d at 59 (reverse with award of disability benefits).

7. *Dobrowolsky v. Califano*, 606 F.2d at 407.

8. *See id.; Domozik v. Cohen*, 413 F.2d 5, 9 (3d Cir. 1969).

9. 20 C.F.R. § 404.1503 (1979).

1503(d). Note that inquiries beyond medical considerations and current work activity, as to whether the individual has any impairments which prevent past relevant work, *id.* § 404.1503(e), or whether the individual's impairments prevent other work, *id.* § 404.1503(f), are subsequent steps which are *unnecessary* if the claimant's disability falls within Appendix 1. These subsequent inquiries require assessment of vocational factors such as age, education, and work experience.

Appendix 1 sets forth the following impairment under the musculoskeletal category:

1.02 *Active rheumatoid arthritis and other inflammatory arthritis.* With both A and B:

A. Persistent joint pain, swelling, and tenderness involving multiple joints with signs of joint inflammation (heat, swelling, tenderness) despite therapy for at least 3 months, and activity expected to last over 12 months; and

B. Corroboration of diagnosis at some point in time by either:

1. Positive serologic test for rheumatoid factor; or

2. Antinuclear antibodies; or

3. Elevated sedimentation rate.

In the record, there is evidence that Mr. Livingston had clear signs of rheumatoid arthritis as early as 1974. Indications of rheumatoid arthritis and bursitis were present when Mr. Livingston was hospitalized in October 1976.[10] According to Dr. Ryan's report in July 1977, corroboration of rheumatoid arthritis was found by the presence of a positive rheumatoid factor. The inflammatory activity clearly has persisted for more than 12 months despite treatment for 3 consecutive months by Dr. Williams. Thus, the medical evidence appears to establish that Mr. Livingston comes within this category of the regulations. Yet since Mr. Livingston was not represented by counsel, this argument was never made by

him. The inability of the claimant to set forth this argument does not mean that we are to reach the unfair and unjust conclusion that he did not meet his burden of going forward, but to the contrary, we can only conclude that the ALJ did not adequately discharge his "duty to develop the record with special care" when a claimant is unrepresented.[11]

We are presented with a situation where the ALJ failed to inquire properly into the claimant's strongest argument and yet did inquire about arguably irrelevant matters, such as asking the question of the vocational expert regarding the claimant's age, education and work experience (vocational factors). However, assuming, arguendo, that this inquiry was necessary as a way for the Secretary to establish substantial evidence, the inquiry was also inadequate. The vocational expert was asked to assume that if Mr. Livingston was not medically prevented from light and sedentary work, "what type of work could he perform . . . considering his age, education, and vocational background, and also limiting himself to jobs that exist in substantial number in the local and national economy?" However, there is no indication that Mr. Livingston's age, education, and work experience were given any serious consideration. *Dobrowolsky v. Califano*, 606 F.2d at 409 n.19. In addition, Mr. Livingston was unable to and did not cross-examine the vocational expert who was therefore never required to explain his answers. There is no evidence of any real attempt to determine what other jobs or type of work experience Mr. Livingston had prior to his employment as a mason. We therefore hold that Mr. Livingston was prejudiced by lack of counsel and the ALJ's failure adequately to develop the record.

In conclusion, Mr. Livingston has met his burden of showing that he is unable to return to his customary employment, and the Secretary has not come forward with

---

10. *See* Grays, Attorney's Textbook of Medicine, ¶ 7.71, at 7–151 (3d ed. 1976) ("bursitis also can occur in . . . rheumatoid arthritis . . .").

11. *Dobrowolsky v. Califano*, 606 F.2d at 407.

substantial evidence to support HEW's conclusions.

We therefore vacate the district court's order of summary judgment and direct that the matter be remanded to the agency for a further hearing.