**Danielle HERRING, Plaintiff,**

**v.**

**Carolyn COLVIN[1], Commissioner of Social Security, Defendant.**

**Civil Action No. 3:12-CV-02211**

United States District Court,
M.D. Pennsylvania.

Filed 09/29/2014

---

1. As the term of named defendant, Michael J.

Astrue, ended January 19, 2013, the clerk will

be directed to change the named defendant to current acting Commissioner, Carolyn Colvin.

Sharon Gornstein, Leventhal Sutton & Gornstein, Trevose, PA, for Plaintiff.

Timothy S. Judge, Scranton, PA, for Defendant.

## ORDER

Matthew W. Brann, United States District Judge

And now, this 29th day of September 2014, having reviewed the thorough report and recommendation of Magistrate Judge Gerald B. Cohn, objections to the report and recommendation, and the government's response, the report and recommendation of the Magistrate Judge is ADOPTED. July 29, 2014 ECF No. 16.

The decision of the Commissioner is AFFIRMED. The Clerk is directed to close the case file.

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S APPEAL

### GERALD B. COHN, UNITED STATES MAGISTRATE JUDGE

### REPORT AND RECOMMENDATION

#### I. Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Danielle Herring's application for supplemental security income benefits. Plaintiff claims she was prejudiced by the failure of the administrative law judge ("ALJ") to develop the record because she was unrepresented at the ALJ hearing. However, although she generically alleges she was prejudiced by the ALJ's failure to obtain new medical evidence or elicit additional testimony, she fails to proffer any new medical evidence or summarize any proposed additional testimony. Plaintiff does not make a single factual allegation as to the content of the evidence that was allegedly wrongfully omitted from the ALJ's consideration. Plaintiff has failed to show that, if the evidence had been before the ALJ, there is even a chance the evidence would have changed the ALJ's determination that Plaintiff was not disabled. Given that Plaintiff was only twenty-eight years old at the time of the ALJ's decision, received only very conservative treatment for her impairments, and provided no evidence of her limitations other than her self-report, the Court finds that Plaintiff has failed to sustain her burden to show clear prejudice resulting from the ALJ's alleged procedural deficiencies. For the reasons that follow, the Court also

finds that the ALJ's determinations as to Plaintiff's credibility and the severity of her impairments supported by substantial evidence. Therefore, the Court recommends that Plaintiff's appeal be denied and her case closed.

## II. Procedural Background

On April 7, 2010, Danielle Herring ("Plaintiff") filed an application for Supplemental Security Income benefits under Title XVI of the Social Security Act. (Tr. 84-90). On July 30, 2010, the Bureau of Disability Determination[1] denied Plaintiff's application for SSI, and Plaintiff filed a request for a hearing on August 6, 2010. (Tr. 67-75). On June 6, 2011, a hearing was held before an ALJ at which Plaintiff, who was not represented by an attorney, and a vocational expert appeared and testified. (Tr. 44-63). On August 20, 2011, the ALJ found that Plaintiff was not disabled and thus was not entitled to benefits. (Tr. 14-27). On October 14, 2011, Plaintiff filed a request for review with the Appeals Council (Tr. 12), which the Appeals Council denied on September 6, 2012, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-5).

On November 6, 2012, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On January 11, 2013, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 7, 8). On April 12, 2013, Plaintiff filed a brief in support of her appeal ("Pl. Brief") (Doc. 11). On May 15, 2013, Defendant filed a brief in response ("Def. Brief") (Doc. 12). On May 29, 2013, Plaintiff filed a reply brief ("Pl. Reply") (Doc.13). On April 29, 2014, the Court referred this case to the undersigned Magistrate Judge.

## III. Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether the factual findings underlying denial are supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir.2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.1999); Johnson, 529 F.3d at 200.

Substantial evidence is a deferential standard of review. See Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir.2004). Substantial evidence is satisfied without a large quantity of evidence; it requires only "more than a mere scintilla" of evidence. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir.1999).Substantial evidence may be less than a preponderance. Jones, 364 F.3d at 503. Thus, if a reasonable mind might accept the relevant evidence as adequate to support the conclusion reached by the Acting Commissioner, then the Acting Commissioner's determination is supported by substantial evidence and stands. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir.1986).

To receive disability or supplemental security benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

---

1. The Bureau of Disability Determination is an agency of the state which initially evaluates applications for disability insurance benefits on behalf of the Social Security Administration. Tr. 77-78.

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that she has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

A five-step evaluation process is used to determine if a person is eligible for disability benefits. See 20 C.F.R. § 404.1520; see also Plummer, 186 F.3d at 428. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. § 404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. See 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The initial bur-den rests with the claimant to demonstrate that she is unable to engage in past relevant work. In other words, the Plaintiff bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir.1993). The ultimate burden of proving disability within the meaning of the Act lies with the plaintiff. See 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## IV. Relevant Facts in the Record

Plaintiff was born on March 28, 1983, was only twenty-six years old at the time of her application and twenty-eight years old at the time of the ALJ's decision. (Tr. 37). Plaintiff was classified by the regulations as a "younger individual" at the time of her application and on the date of the ALJ decision. 20 C.F.R. § 404.1563. She has at least a high school education and no past relevant work. (Tr. 27).

Medical records show that on February 11, 2008, Plaintiff saw her treating physician for abdominal pain, but denied pain in all other areas. (Tr. 154). On June 4, 2008, Plaintiff was evaluated for dyspnea when she had difficulty breathing. She denied chest pain, abdominal pain, and all other symptoms. (Tr. 151). She was observed to have no tenderness and no weakness. (Tr. 152). On February 5, 2009, Plaintiff was evaluated for asthma when she had difficulty breathing after running out of her inhaler. (Tr. 148). She denied weakness, fatigue, back pain, chest pain, abdominal pain and all other symptoms. (Tr. 148). Plaintiff was prescribed prednisone. (Tr. 150).

On December 11, 2009, Plaintiff was again evaluated for asthma and denied

weakness and all other symptoms. (Tr. 145). She reported no tenderness. (Tr. 146). On January 20, 2010, Plaintiff was seen by Kenneth Tomczyk, D.O, because she "disagreed" with her previous primary care physician's care. (Tr. 179). She presented with depression. (Tr. 179). She denied chest pain, weakness, and all other symptoms. (Tr. 179). Her medications included Effexor and Clonazepam. (Tr. 179). Although she was "anxious and crying," she was "alert, healthy, well nourished, and well developed." (Tr. 180). She had no tenderness, joint deformities, effusion, inflammation, normal gait, normal reflexes, and a normal skin exam. (Tr. 180). Plaintiff was a recovering heroin addict, and reported that she had last used heroin one and a year years prior. (Tr. 180).

On February 12, 2010, Plaintiff was seen by Dr. Tomczyk. She was having allergy issues and pain during bowel movements, but denied chest pain, weakness, and all other symptoms. (Tr. 190). She was "alert, healthy, no distress, well nourished and well developed." (Tr. 191). She had no tenderness. (Tr. 191).

On February 19, 2010, Plaintiff was seen for a Hepatitis C consult with Athar Altaf, M.D. Plaintiff reported that she had a history of anxiety, was on medication but still anxious. (Tr. 198). She reported that she had no pain related to her gallbladder surgery or gall bladder inflammation. (Tr. 198). She reported that she had no active symptoms of fibromyalgia. (Tr. 198). She reported that she was taking Clonazepam and Effexor. (Tr. 198). She was "alert, healthy, [in] no distress, well nourished and well developed." (Tr. 199). She reported no tenderness, had no motor or sensory defects, and a normal skin and musculoskeletal exam. (Tr. 199). On March 9, 2010, Plaintiff followed up with Dr. Tomczyk for her breathing and urinary problems. He noted that she had diffuse arthralgia and

myalgias, but denied all other symptoms. (Tr. 216). She reported musculoskeletal pain. (Tr. 218).

On April 7, 2010, Plaintiff was seen by Dr. Tomczyk. Plaintiff reported that she was anxious because her husband had started using heroin again, and would be moving out of her home and into a shelter to get away from him. (Tr. 241). Her physician noted that she was "alert, healthy, no distress, well nourished and well developed," but increased her Effexor and Clonazepam to deal with her increased anxiety. (Tr. 242). She reported that she had an upcoming appointment with a rheumatologist for diffuse arthralgias and a positive antinuclear antibody test, but her review of symptoms was otherwise negative. (Tr. 241). Plaintiff applied for disability benefits on the same day. (Tr. 84).

By the next day, when Plaintiff was seen for a follow-up for Hepatitis C with Dr. Altaf, she was living in the shelter. (Tr. 248). She was "alert, healthy, no distress, well nourished and well developed." (Tr. 248). She had a normal musculoskeletal exam, had no tenderness, and reported no pain, although she was under a lot of stress and having a lot of anxiety. (Tr. 248).

On April 13, 2010, Plaintiff requested an increase in Clonazepam (Tr. 337). Dr. Tomczyk approved the increase by one additional tab in the evening. (Tr. 337). On April 26, 2010, Plaintiff was scheduled for a cystourethroscopy with possible biopsy and hydrodistention under anesthesia for her hepatitis C. (Tr. 258). At her preoperative work up on April 22, 2010, she reported "neuro numbness of the limbs," musculoskeletal joint stiffness, joint pain and back pain. (Tr. 257). Plaintiff completed the procedure, was discharged on April 27, 2010, and cleared to return to work or school on April 28, 2010. (Tr. 290).

On May 4, 2010, Plaintiff saw Dr. Tomczyk for a follow-up. Plaintiff reported pain in her back and legs and that she could not stand for a prolonged period. (Tr. 309). Dr. Tomczyk noted that Plaintiff's "Mother would like her to have a drug test as she doesn't trust her." (Tr. 309). Plaintiff reported that she had been taking the Effexor and Clonazepam. (Tr. 309). Dr. Tomczyk performed osteopathic manipulative treatment "with good results." (Tr. 311). Plaintiff tolerated the treatment well. (Tr. 311).

On May 5, 2010, Plaintiff was seen for a mental health evaluation. She reported that she was taking steps to regain custody of her nine-year old son to be his primary care taker. (Tr. 422). Plaintiff also reported that her back issues contributed to her depression. (Tr. 422). On June 2, 2010, Plaintiff was seen in the Urgent Care unit at the Geisinger Wyoming Valley Medical Center for a cough and sore throat. (Tr. 443). Plaintiff was diagnosed with acute bronchitis. (Tr. 452). Plaintiff denied all other symptoms. (Tr. 443).

On June 2, 2010, Jeane Zibierski of Wyoming Valley Alcohol and Drug Services, Inc. provided a letter to the Bureau of Disability Determination. She indicated that Plaintiff had attended appointments only sporadically as a result of transportation and that she had last used substances in April of 2009. (Tr. 441). On June 8, 2010, Plaintiff was seen by Dr. Tomczyk for a follow-up. She reported that she was still taking Clonazepam twice a day and 150 mg of Effexor. (Tr. 454). Dr. Tomczyk noted that she "still has myalgias and markedly elevated ANA. . . ." along with intermittent numbness in both of her legs and back pain. (Tr. 454). Dr. Tomczyk observed mild to moderate muscle spasms in her back. (Tr. 455). She denied all other symptoms. (Tr. 454).

On June 30, 2010, Plaintiff was seen by a rheumatologist, Miroslawa Nowak, MD, for evaluation of diffuse pain with diagnoses of fibromyalgia and elevated ANA. (Tr. 471). Dr. Nowak noted that Plaintiff had presented with similar symptoms in 2004 and that "no diagnosis of connective tissue disease [was] made at that time." (Tr. 471). Her symptoms were "not much different than she has had in the past." (Tr. 471). Dr. Nowak also noted that "she is asking not to prescribe any narcotic pain medications or any sedating medications." (Tr. 472). Plaintiff reported joint pain but no swelling, stiffness or pain in her muscles. (Tr. 472). Plaintiff had 12 out of 18 fibromyalgia tender points positive. (Tr. 473). Dr. Nowak opined that Plaintiff's "symptoms of diffuse pain and fatigue and also symptoms of severe pain and profound tiredness after more intense activities . . . are most consistent with fibromyalgia syndrome." (Tr. 473). Dr. Nowak explained that Plaintiff needed to exercise, sleep, and pace herself. (Tr. 473). Dr. Nowak discussed treatment with Savella, an antidepressant, but Plaintiff preferred to stay off medications and "try to adapt to life-style changes." (Tr. 473). Dr. Nowak recommended that Plaintiff follow up in six months. (Tr. 474). Dr. Nowak found no evidence of connective tissue disease, including rheumatoid arthritis. (Tr. 473). Plaintiff reported difficulties bending down to the floor, turning faucets, and getting in and out of the car as limitations caused by her fibromyalgia. (Tr. 472).

On July 29, 2010, state agency physician Anna Zaydan, M.D. completed a Physical Residual Functional Capacity Assessment. (Tr. 512-515). Dr. Zaydan opined that Plaintiff could stand or walk for six hours in an eight hour workday and that Plaintiff could sit for six hours in an eight hour workday. (Tr. 513). She opined that Plaintiff had no limitations for pushing, pulling, climbing, balancing, stooping, kneeling,

crouching, crawling. (Tr. 513-14). She opined that Plaintiff has no manipulative, visual, or communicative limitations, but that Plaintiff had various environmental limitations because of her asthma. (Tr. 514-15). Dr. Zaydan opined that Plaintiff's statements were partially credible because the overall evidence suggests that she has the ability to care for herself and maintain her home, she had no recent treatment for Hepatitis C, and her treatment for asthma had been conservative and routine. (Tr. 515).

Prior to the ALJ hearing, Plaintiff received multiple notices that informed her of her right to counsel, the importance of providing medical and testimonial evidence, and that resources for finding free or affordable lawyers. Specifically, Plaintiff averred under penalty of perjury that she "understand[s] that [she] ha[s] a right to be represented at the hearing. If [she is] not represented but would like to be, the Social Security office can give [her] a list of legal referral and service organizations." (Tr. 72). She also averred under penalty of perjury that:

> I have been advised of the right to appear in person before an Administrative Law Judge. I understand that my personal appearance before an Administrative Law Judge would provide me with the opportunity to present written evidence, my testimony and the testimony of other witnesses. I understand that this opportunity to be seen and heard could be helpful to the Administrative Law Judge in making a decision.

(Tr. 72). She also averred that she understood that these opportunities "could be especially useful in my case since the Administrative Law Judge would have an opportunity to hear an explanation as to how my impairments prevent me from working and restrict my activities." (Tr. 73).

Plaintiff received a Notice dated August 18, 2010 from the Social Security Administration that stated "[b]ecause the hearing is the time to show the ALJ that the issues should be decided in your favor, we need to make sure that your file has everything you want the ALJ to consider. We can help you get needed evidence." (Tr. 76). It further stated that:

> You may choose to be represented by a lawyer or other person. A representative can help you get evidence, prepare for the hearing, and present your case at the hearing. If you decide to have a representative, you should find one immediately so that he or she can start preparing your case.
>
> . . .
>
> Some private lawyers charge a fee only if you receive benefits. Some organizations may be able to represent you free of charge. Your representative may not charge or receive any fee unless we approve it. We are enclosing a list of groups that can help you find a representative.
>
> . . .
>
> If there is more evidence you want the ALJ to see, please submit it to us as soon as possible. If you need help, you should immediately contact our office, your local Social Security office, or your representative (if you appoint one). Evidence you cannot submit to us before the hearing may be brought to the hearing, but earlier submission of evidence can often prevent delays in reviewing your case. If a physician, expert or other witness is not cooperating with the production of documents important in your case, you may ask the ALJ to issue a subpoena that requires a person to submit documents or testify at your hearing.

(Tr. 76-77). Plaintiff also received a notice titled "Your right to representation" (Tr.

78), providing additional information about her right to counsel and the nature of the ALJ hearing. At the hearing, Plaintiff testified that she got these notices, that she reviewed the provisions regarding her right to have an attorney or non-attorney present, and that she understood attorneys normally do these cases on a contingent-fee basis. (Tr. 47-48).

Substantively, Plaintiff testified that her nine-year old child lives with her mother but that her one-month old infant resided with her. (Tr.50). She testified that she had worked in 2010 as a waitress and at K-Mart, but that she had to stop working at K-Mart because she was having a lot of trouble with her pregnancy. (Tr. 51). She testified that she had recently seen several doctors. (Tr. 52). She testified that she takes care of her own personal care, does household chores, is the primary caretaker of her newborn, does her own shopping, regularly attends church services, reads books, and watches TV. (Tr. 52-53). Plaintiff testified that she stand for only thirty minutes, sit for two hours, but that she can walk "pretty far." (Tr. 56). Plaintiff testified that she was only taking ibuprofen, vitamins, and allergy medications. (Tr. 56). Plaintiff testified that she tried to manage her symptoms by going for walks, taking baths, and stretching. (Tr. 56-67). Plaintiff testified that she struggled at K-Mart because of "the standing thing" and that sitting for too long aggravates her pain. (Tr. 57). Plaintiff also explained that she was reluctant to take medication because of her prior drug addiction. (Tr. 58).

For hypotheticals, the ALJ first limited Plaintiff to medium work, avoiding temperature extremes, humidity and fumes, simple, routine tasks and low stress as defined as only occasional decision-making required and only occasional changes in the work setting. (Tr. 59). The vocational expert testified that Plaintiff could perform her past relevant work as a cashier and could also work as a retail clerk, an office machine operator, and a reception information clerk. (Tr. 60). The ALJ next added the following limitation:

> May require breaks in excess of the normal two per day plus lunch. And/or may require unscheduled breaks of varying lengths throughout the day. And/or may be reasonably expected to be absent in excess of three times per month. And/or may be reasonably expected to be off-task 30 percent of the day.

The vocational expert testified that, given those conditions, Plaintiff would be unable to perform her past relevant work or any work in the national economy. (Tr. 61).

The ALJ found that Plaintiff's asthma, depression, anxiety and polysubstance abuse were medically determinable and severe at step two. (Tr. 19, Finding 2). The ALJ found that Plaintiff's chronic back pain and fibromyalgia were medically determinable but not severe. (Tr. 19, Finding 2). The ALJ determined that none of Plaintiff's impairments met or equaled a Listing at step three. (Tr. 22, Finding 3). The ALJ adopted the RFC analysis reflected in her first hypothetical that Plaintiff can engage in medium work, sit, stand or walk 6 hours in an 8 hour workday, must avoid temperature extremes, humidity and fumes, and be limited to simple, routine tasks and low stress as defined as only occasional decision making and only occasional change in work setting. (Tr. 23, Finding 4). The ALJ found that Plaintiff has no past relevant work, but that Plaintiff can engage in work that exists in significant numbers in the national economy. (Tr. 26, Findings 5, 9). Specifically, the ALJ found that Plaintiff could work as a retail clerk, an office machine operator, and receptionist/information clerk. (Tr. 27, Finding 9).

## V. Plaintiff Allegations of Error

### A. The ALJ's development of the record

#### 1. Failing to elicit additional questions or testimony about additional limitations

■ Plaintiff alleges that the ALJ failed to discharge her duty to fully develop the record because she was not assisted by counsel at the hearing. Plaintiff specifically asserts that remand is required because the ALJ did not update Plaintiff's medical records, did not encourage Plaintiff to obtain and present recent medical records, did not "explain to [Plaintiff] that she also had a right to ask questions of the VE," and did not invite Plaintiff to ask questions of the VE. (Pl. Brief at 5-6). Plaintiff also alleges that the ALJ failed to discharge her duty because she did not "explain to [Plaintiff] the significance that the regulations accord to the opinion of a claimant's treating physician," did not ask Plaintiff whether her physicians had placed limitations on her, suggest to Plaintiff that she obtain a medical source statement, take independent steps to obtain a medical source statement, explain that witnesses can be important, or explain that her failure to bring witnesses might adversely affect the ALJ's credibility assessment. (Pl. Brief at 7-8). Defendant responds that Plaintiff fails to identify any prejudice caused by these alleged omissions and has never proffered the wrongfully excluded evidence to the Court.

■ When a claimant is not assisted by counsel, "the ALJ has an obligation [to] 'scrupulously and conscientiously probe into, inquire of, and explore all relevant facts....'" Jozefick v. Shalala, 854 F.Supp. 342, 344 (M.D.Pa.1994) (Vanaskie, J.) (quoting Smith v. Sec'y of Health, Educ. and Welfare, 587 F.2d 857, 860 (7th Cir.1978)). However, even if the ALJ errs in developing the factual record, the Plaintiff must show clear evidence of prejudice from this error:

> The fact that a claimant is unrepresented by counsel and has knowingly waived this right is not alone sufficient for remand. However, if it is clear that the lack of counsel prejudiced the claimant or that the administrative proceeding was marked by unfairness due to the lack of counsel, this is sufficient for remand, or reversal.

Livingston v. Califano, 614 F.2d 342, 345 (3d Cir.1980) (internal citations omitted). "The question is not 'whether every question was asked which might have been asked had [the claimant] been represented by an attorney, [but] whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'" Jozefick v. Shalala, 854 F.Supp. 342, 344 (M.D.Pa. 1994) (Vanaskie, J.) (quoting Edwards v. Sullivan, 937 F.2d 580, 585-86 (11th Cir. 1991)). As one Court in this District has explained:

> "While an ALJ is required to assist the claimant in developing a full record, he or she has no such obligation to 'make a case' for every claimant." Kenyon v. Colvin, 2013 U.S. Dist. LEXIS 175897, 2013 WL 6628057 (M.D.Pa.2013). The burden still "lies with the claimant to develop the record regarding his or her disability because the claimant is in a better position to provide information about his or her own medical condition." Money v. Barnhart, 91 Fed.Appx. 210, 215 (3d Cir. 2004). citing Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and 20 C.F.R. §§ 404.1512(a) and 416.912(a).

Martin v. Colvin, 4:11–CV–02378, 2014 WL 1235664 (M.D.Pa. Mar. 25, 2014)(Nealon, J.).

The entirety of Plaintiff's prejudice argument is contained in the following paragraph:

Defendant argues that prejudice has not been shown, because "Plaintiff fails to articulate what else, if anything, her counsel could have elicited that would have assisted her claim." (Def. Brief at 14). To the contrary, Plaintiff's brief points to the types of things that the ALJ did not do, e.g., she did not assist Plaintiff in reformulating her comment [about being unable to sit or stand for too long] after the VE's testimony into a properly worded hypothetical question. Certainly, Plaintiff's counsel would have asked additional questions of the VE that would have encompassed additional medically-supported functional limitations. Counsel would also have sought an opinion from Plaintiff's treating sources about her work-related functional limitations, which the ALJ never attempted to do. In addition, Counsel would have brought out additional testimony from the claimant, and also from a corroborating witness.

(Pl. Reply at 2). Plaintiff is conflating the two requirements for a remand based on failure to develop the record. An ALJ must have failed to develop the record, and prejudice must be shown. Plaintiff argues that she showed prejudice by "pointing to the types of things that the ALJ did not do." Identifying things that the ALJ did not do addresses the first requirement, namely, whether the ALJ failed to develop the record. Pointing out what the ALJ did not do does not address prejudice.

The determinative factor in this case is the appropriate role of a prejudice requirement. Plaintiff has failed to proffer or describe any additional evidence the ALJ should have considered and has failed to make any new argument based on existing evidence. She argues that she did not need to do so, and that "[t]he ALJ's decision must be judged on what is contained in the four corners of the decision." (Pl. Reply at 3). In essence, Plaintiff is arguing that

procedural requirements exist for the sake of procedure. Plaintiff argues that, even though she was young, the sole caretaker for an infant child, and produced medical records that overwhelmingly showed that she was healthy, there is some evidence in existence that shows that she is, in fact, disabled. She argues that she does not need to show this evidence to the Court because the ALJ made procedural errors, and that these errors alone require a remand. Plaintiff's allegations of prejudice are the epitome of bare and conclusory: she would have asked "additional questions" about "additional limitations." The only way to grant her remand based on procedural defects, then, is to essentially dispense with the prejudice requirement.

One Court has adopted Plaintiff's assertion:

> The Secretary has argued that it is not enough to show that the ALJ failed to develop a full record; instead, asserts the Secretary, the claimant must show "that the outcome of her case might reasonably have been different if she had elected to be represented by an attorney." (Brief in Support of Secretary's Motion for Summary Judgment (Dkt. Entry No. 11) at p. 12.) No such requirement, however, can be discerned from the pertinent case law. On the contrary, cases have been remanded in order to more fully develop the record without requiring the claimant to make a specific proffer of the evidence that would be presented to the ALJ on remand.

For example, in Coulter v. Weinberger, 527 F.2d 224 (3rd Cir.1975), as in the instant matter, the claimant's insured status had expired many years prior to the filing of an application for benefits. As in the instant matter, there were significant evidentiary gaps in the rec-

ord, including, in particular, medical information that the ALJ had failed to pursue. The Third Circuit did not require the claimant to produce that information for review by the court. Instead, the Third Circuit remanded the case because, in its view, the absent records "*might* be expected to yield some data helpful to determine [the claimant's] conditions. . . ." 527 F.2d at 230 (emphasis added). See also Walsh v. Heckler, 608 F.Supp. 500, 501 (E.D.Pa.1985) (remanding matter to the Secretary where the ALJ failed to develop a complete record on the question of a disabling condition covering a period of time years prior to the filing of the application for benefits).

Similarly, in Dobrowolsky, *supra*, the Third Circuit did not require an offer of proof as a condition for a remand where the ALJ had not adequately developed the record. And, in *Hess v. Secretary of Health, Ed. and Welfare*, a remand was ordered even though the claimant did not show that the information the ALJ had failed to develop would have resulted in a different outcome. 497 F.2d 837, 840–41(3rd Cir.1974). As explained in Clark v. Schweiker, 652 F.2d 399, 404 (5th Cir.1981), "we are not required to determine that the presence of counsel would necessarily have resulted in· any specific benefits in the handling of the case before the ALJ."

Requiring a judicial determination of a likelihood of prevailing could preempt the Secretary's authority to make disability determinations in the first instance. Moreover, requiring a claimant to establish a probability of success as a condition for remand is inconsistent with the deference that must be accorded the Secretary's final ruling on remand. Cf., Erwin v. Secretary of Health, Education & Welfare, 312 F.Supp. 179, 185– 86 (D.N.J.1970) (a remand ordered because the ALJ failed to develop a complete record on a *pro se* claimant's application for disability insurance benefits was not intended to suggest that the Secretary award benefits). In short, "good cause" to order a remand under 42 U.S.C. § 405(g) is established where, as here, the ALJ has failed to exercise his authority to attempt to fill significant evidentiary gaps that are material to the disability determination. Cf., Saldana v. Weinberger, 421 F.Supp. 1127, 1131 (E.D.Pa.1976) ("good cause" warranting a remand present where ALJ fails to assist unrepresented claimant in the presentation of evidence of disabling condition before insured status had expired).[12]

Jozefick v. Shalala, 854 F.Supp. 342, 349 (M.D.Pa.1994).

The Court finds the reasoning in Jozefick unpersuasive. First, such a requirement *can* be discerned from the case law. In Coulter, the Court noted that claimant "admittedly is disabled, but his successive applications for benefits under the Social Security Act have been denied in a series of administrative actions marred by clerical errors and incomplete evaluations." Id. at 226. Medical records showed, *inter alia*, that the claimant contracted tuberculosis in the Vietnam War and was hospitalized for several months, had a portion of his right lung, one rib and part of another rib removed, was suffered for spontaneous pneumothorax on the left, and was hospitalized for almost a year with schizophrenia and received electroshock treatment. Claimant was improperly denied benefits in 1959, thirty-five years prior to the District Court's decision, because the Social Security Administration wrongfully con-

cluded that he had not worked for enough quarters to award him benefits. Claimant was improperly denied benefits when he filed for disability in 1967 because the ALJ focused exclusively on a period of time in 1962 when he had minimal earnings to determine that he was capable of engaging in substantial gainful activity. Id. at 227. The Court also concluded that the ALJ improperly applied administrative res judicata. Id. at 228. The Court found it particularly troubling that the medical records from claimant's hospitalization for schizophrenia and electroshock treatments had not been considered. Id. As Jozefick notes, the Court remanded because these records "might be expected to yield some data helpful to determine [the claimant's] conditions. . . ." Id. at 230.

Jozefick relied on Coulter for the premise that a claimant need not proffer medical records or otherwise show prejudice where there are evidentiary gaps. However, the Court knew the content of the excluded medical records. They documented a year-long hospitalization for schizophrenia and ten electroshock treatments. The Court also identified specific administrative errors and concluded that the outcome might have been different but for those errors. Thus, the Court had enough factual information to conclude that the outcome might have been different but for the procedural errors. The failure to require a proffer in that context does not mean that prejudice does not need to be shown.

Jozefick also cites Clark v. Schweiker. However, Clark v. Schweiker addressed the standard when right to representation is not waived by the claimant. The Court noted that, where the claimant has waived the right to counsel, there must be a "showing of such a clear prejudice or unfairness . . . caused by . . . lack of counsel as would warrant a reconsideration of . . .

his claims by the Secretary." Id. at 404. Here, Plaintiff has not alleged that she did not knowingly and voluntarily waive her right to counsel. If she had made that allegation, the Court would have disagreed, because she received multiple notices regarding her right to counsel and the availability of free or low-cost counsel, and testified under oath that she received and understood these notices and her right to counsel.

■ Plaintiff here cites several cases, but none remanded without the requisite finding of prejudice. A claimant can show prejudice by identifying a new argument based on the existing evidence that would have been raised if the ALJ developed the record or claimant was represented by counsel. For instance, in Livingston v. Califano, 614 F.2d 342 (3d Cir.1980), the claimant argued that if he had been able to make an argument that his rheumatoid arthritis fit a Listing, then he would have been able to establish disability. Id. at 346. The ALJ failed to explore this evidence at the hearing. Id. As a result, the court concluded that claimant was "prejudiced by" the failure to develop the record. Id. Similarly, in Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir.1979), the claimant argued that if the ALJ had explored and analyzed additional evidence, he may have satisfied one of the cardiovascular Listings. Id. at 407–409. The Court concluded that the claimant was "prejudiced by lack of counsel and passivity of the ALJ." Id. at 409. Similarly, in Reefer v. Barnhart, 326 F.3d 376, 380–81 (3d Cir.2003), Plaintiff alleged that he was prejudiced by the failure of the ALJ to obtain medical records, including a head CT, that documented brain stem surgery and a stroke. Id. In Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir.1995), the Court concluded that the claimant was prejudiced because the ALJ exhibited partiality and bias. In Ventura,

the ALJ violated regulations requiring that a judge be impartial because "[t]he ALJ's questioning of the claimant was coercive and intimidating, and totally irrelevant to the question of whether claimant was disabled." Id. at 903.

■ Second, allowing a claimant to secure a remand for failing to develop the record without any showing of prejudice would allow a back door around the materiality requirement of a sentence six remand. Pursuant to sentence six of 42 U.S.C. § 405(g):

The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

Id. (emphasis added). In order to be material, "there [must] be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." Szubak v. Secretary of Health and Human Servs., 745 F.2d 831, 833 (3d Cir.1984).

■ Arguing that the ALJ failed to develop the record is akin to arguing that there should be additional evidence taken before the Commissioner of Social Security. Although an ALJ has a heightened duty to develop the record for unrepresented claimants, the ALJ still has a duty to develop the record for claimants who are represented by counsel. Thus, most claimants could simply reword a request for a sentence six remand into a request for remand based on failing to develop the record. If there was evidence that existed prior to the ALJ's decision, a claimant could argue that the ALJ failed to develop the record if the ALJ failed to take the requisite steps to obtain the evidence. If there was evidence that did not yet exist at the time of the ALJ's decision, a claimant could argue that the ALJ failed to develop the record if the ALJ failed to leave the record open after the hearing. If prejudice is not required for a remand for failure to develop the record, then framing these arguments as a failure to develop the record, rather than a sentence six remand for consideration of new evidence, would dispense with the materiality requirement for a sentence six remand.

Third, requiring a judicial determination about the probability of prevailing would not preempt the Secretary's authority to make a determination in the first place. Judicial determinations about the probability of prevailing exist throughout the legal sphere. A judge can deny a motion for summary judgment under Fed. R. Civ. Pro. 26 because there is a reasonable possibility that a jury or fact-finder could find in favor of the nonmoving party without preempting the role of the jury or fact-finder. Similarly, a judge can grant a defense motion for summary judgment by finding that no reasonable fact-finder would find for the plaintiff. Fed. R. Civ. Pro. 26. Moreover, as discussed above, judicial determinations about the probability of prevailing are required in the context of a sentence six remand.

The Court also notes that Jozefick does not unequivocally hold that any procedural error must result in remand. Instead, the Court writes that " 'good cause' to order a remand under 42 U.S.C. § 405(g) is established where, as here, the ALJ has failed to exercise his authority to attempt to fill significant evidentiary gaps that are mate-

rial to the disability determination." Id. at 349 (emphasis added). Evidentiary gaps are only material if filling those gaps would create a reasonable possibility that the disability determination would change.

▬▬▬▬ "The administrative hearing is subject to considerations of due process." Richardson v. Perales, 402 U.S. 389, 401–02, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). However, "in most cases involving claims of due process deprivations we require a showing of identifiable prejudice to the accused." U. S. ex rel. Doggett v. Yeager, 472 F.2d 229, 238 (3d Cir.1973) (quoting Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543). Although "at times a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process," the Third Circuit has repeatedly and clearly enunciated a prejudice requirement in the context of an ALJ's requirement to develop the record. Id. The Third Circuit cases cited above did not remand based on procedural errors for the sake of procedure, they remanded because the procedural errors caused identifiable, concrete prejudice to the claimants. Moreover, as the Supreme Court explained in the context of allowing medical reports to be admitted without authenticating testimony, "[t]here is an additional and pragmatic factor which, although not controlling, deserves mention. This is what Chief Judge Brown has described as '(t)he sheer magnitude of that administrative burden...'" Richardson v. Perales, 402 U.S. 389, 406, 91 S.Ct. 1420, 1430, 28 L.Ed.2d 842 (1971). (internal citations omitted). Allowing claimants who have produced no evidence that they are or could be actually disabled to obtain a remand based on alleged procedural errors would be inefficient and unnecessarily deepen the "sheer magnitude of the administrative burden."

▬▬▬▬ As discussed above, Plaintiff made no more than bare and conclusory allegations as to the prejudice she suffered. In order to grant a remand, the Court would need to adopt the reasoning of Jozefick or otherwise dispense of the requirement that she show clear evidence of prejudice. The Court concludes that, in this context, procedural errors do not inherently produce prejudice. A claimant cannot merely point to procedural errors without making providing some demonstration as to how those procedural errors resulted in a flawed disability determination. This Court is not authorized to entertain questions of whether violations of due process must require a showing of prejudice in this context, where it is bound by Third Circuit precedent that requires clear evidence of prejudice. Plaintiff may not need to proffer new evidence. However, Plaintiff must either proffer the evidence, inform the Court as to the content of that evidence, provide a new argument to the Court based on that evidence, or otherwise make a showing of prejudice. Plaintiff is in a better position than the ALJ, and the Court, to provide information about her medical condition and has not done so. Money v. Barnhart, 91 Fed.Appx. 210, 215 (3d Cir.2004). Granting Plaintiff's request for a remand in this context would stretch the Third Circuit jurisprudence on the ALJ's duty to develop the record well beyond its current contours and swing a back door wide open to a flood of refashioned sentence six remands. The Court concludes that the plain language of Third Circuit precedent requiring clear evidence of prejudice controls this case. Because Plaintiff has not made a minimal, much less clear, showing of prejudice, the Court recommends that her request for remand based on inadequate development of the record be denied.

### 2. Failing to elicit testimony about a claimed limitation in sitting or standing

 Plaintiff's only specific allegation of prejudice is that if the ALJ had properly developed the record, she would have elicited testimony from the VE that accommodated for Plaintiff's claimed limitation with sitting or standing for too long. However, in the ALJ's second hypothetical, the ALJ elicited testimony from the VE that if Plaintiff required breaks in excess of the normal two per day plus lunch and/or required unscheduled breaks of varying lengths throughout the day, there would be no jobs in the national economy that Plaintiff could perform. Thus, Plaintiff's claim of prejudice from the ALJ's alleged failure to develop the record with regard to her inability to sit or stand is better characterized as a challenge to the ALJ's rejection of Plaintiff's claimed limitation with sitting or standing for long periods of time in the RFC analysis. Cf Morton v. Colvin, 3:12–CV–01738, 2014 WL 2450965 (M.D.Pa. May 28, 2014)(Brann, J.) ("[I]t is clear that the ALJ was not rejecting [the vocational expert's] testimony that a person who missed four days per month would be unemployable. Rather, the ALJ was rejecting Morton's testimony that she would miss four days per month because of panic attacks. As such, the ALJ neither disregarded the vocational expert's testimony, nor did the ALJ engage in a lay analysis that would have compromised his ultimate conclusions."). Moreover, even if the ALJ's hypothetical did not properly account for Plaintiff's claimed limitation, Plaintiff can only have been prejudiced by the ALJ's failure to elicit testimony about her claimed inability to sit or stand for too long if the ALJ improperly discredited her testimony about this limitation. As discussed above, prejudice is required for a remand based on a failure to adequately develop the record.

The Court finds that the ALJ properly discredited Plaintiff's claimed limitation in sitting or standing for too long, and Plaintiff cannot show that she suffered prejudice from the ALJ's supposed failure to elicit testimony regarding this limitation. The only evidence Plaintiff provided of this limitation was her testimony and self-reports to her treating providers. However, the ALJ properly discounted Plaintiff's credibility regarding the persistence, intensity, and limiting effects of her impairments, including her claimed inability to sit or stand for too long.

The ALJ rejected Plaintiff's credibility because of her "admitted activity, benign examination findings, and lack of referral or need for more intense treatment." (Tr. 26). The ALJ also explained that, "[g]iven the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor." (Id.). The ALJ also points out that Plaintiff's mother requested that she take a drug test because she did not trust her. (Id.).

Pursuant to the social security regulations, subjective symptoms, such as pain, shortness of breath, and fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b). SSR 96-4p provides that "allegations about the intensity and persistence of the symptoms must be considered

with the objective medical abnormalities, and all other evidence in the case record, in evaluating the functionally limiting effects of the impairment(s)." Id.

Here, the only objective medical abnormalities were the presence of antibodies, mild to moderate muscle spasms on one occasion, and twelve of eighteen tender points for fibromyalgia. The other evidence in the case record undermined Plaintiff's claimed limitations as a result of pain. Plaintiff does not dispute that none of her medical providers limited her activities for any reason. Plaintiff also does not dispute that her mother requested that she take a drug test because she did not trust her. Plaintiff does not dispute that she reported having no active symptoms of fibromyalgia in February of 2010, two months before filing her application.

Plaintiff alleges that the ALJ "mischaracterized" her testimony. (Pl. Brief at 13). The ALJ wrote that Plaintiff testified she could "sit stand and walk 'pretty far.'" (Tr. 24). However, while Plaintiff testified that she could walk "pretty far," she testified that she could only stand for half an hour and sit for two hours. (Tr. 56). The Court agrees that this was a minor mischaracterization of Plaintiff's testimony. However, the ALJ did not reject Plaintiff's credibility on this reason alone. The ALJ relied on other activities that Plaintiff admitted she can do, noting that Plaintiff testified that she "takes care of her personal care and is able to perform her chores and care for her one-month old child. She uses face book [sic] from her cell phone, does her own shopping, attends church regularly, reads crime novel books, watches TV and likes reality shows including American Idol." (Tr. 23). These activities are inconsistent with an inability to sit or stand for long periods of time. Similarly, although Plaintiff claimed that problems with standing too long caused her to quit her job at

K-Mart, she had earlier testified that she left that job because of complications with her pregnancy. (Tr. 51).

The ALJ found that Plaintiff's back pain and fibromyalgia were not severe because Plaintiff refused to take medication for them. (Tr. 23). Plaintiff alleges that her doctor did not prescribe medication for her, so any refusal to take medication should not be considered in the severity analysis. However, the doctor's failure to prescribe medication to treat her fibromyalgia is as strong, if not stronger, evidence that her condition was not severe and did not cause limitations. If her doctor did not feel that treatment with medication was necessary, it is unlikely that her condition was severe. The Court also notes that despite Plaintiff's claimed aversion to taking medication on June 30, 2010, she indicated in May of 2010 that she was taking Clonazepam, and Effexor, although she had decreased her Clonazepam and "wanted to stop taking Effexor." (Tr. 25). She was taking Effexor for depression. (Tr. 107). Plaintiff's medical records repeatedly show that she was taking Clonazepam and Effexor and that she requested an increase in Clonazepam in mid-April of 2010, approximately seven weeks before she refused Savella. Plaintiff was willing to take Effexor, an antidepressant, to treat her depression, but was not willing to take Savella, an antidepressant, to treat her fibromyalgia. This supports the ALJ's finding that her testimony and claims about the intensity, persistence, and limiting effects of her fibromyalgia symptoms were not credible.

The Court also notes that Plaintiff proffered various sobriety dates to different providers. For instance, in January of 2010, she reported to Dr. Tomczyk that she had been sober for one and half years, which would mean mid-2008. (Tr. 180). However, in March of 2010, she reported

to her drug and alcohol counselor that she had continued using substances up until April of 2009. (Tr. 442). Plaintiff's mother requested a drug test from her provider because she did not "trust her." (Tr. 309). Although Plaintiff indicated that her limitations caused her to be completely disabled, she reported that she was taking steps to regain custody of her oldest son, which would make her the primary caretaker of an infant and a nine-year old. (Tr. 422). Further, the Court notes that Plaintiff filed disability on the same day she was forced to move out of her house and into a shelter for economic reasons to get away from her husband. Thus, the Court finds that the ALJ had substantial evidence to discount Plaintiff's claimed inability to sit or stand for too long, and no prejudice arose from her alleged failure to develop the record on this point.

## B. The ALJ's determination that Plaintiff's fibromyalgia and back pain were medically determinable but non-severe

▆ The ALJ found that Plaintiff's back pain was not severe because her physical exam was normal except mild to moderate muscle spasms, was treated only with osteopathic manipulation, her physician did not order further diagnostic testing, there is no diagnosis of arthritis, there is no evidence of medical imaging to show degenerative or arthritic changes, her back pain did not meet the twelve month duration requirement, and because Plaintiff's credibility regarding her back pain and arthritis was called into question by her mother's May 4, 2010 request for a drug test and statement that she did not trust the Plaintiff. (Tr. 20). The ALJ found that Plaintiff's fibromyalgia was not severe because it was not demonstrated by objective examination findings, Plaintiff did not follow up for this condition, Plaintiff is not receiving active treatment, Plaintiff is not

taking medication to treat this condition, her fibromyalgia did not meet the twelve month duration requirement, and there is no evidence the fibromyalgia causes any functional limitations. (Tr. 21). The ALJ indicated that she reviewed and considered all severe and non-severe impairments in formulating Plaintiff's residual functional capacity. (Tr. 21).

Plaintiff alleges that her back pain and fibromyalgia caused more than minimal limitations, and should have been classified as severe, instead of non-severe, at step two. Plaintiff repeats her allegations that the ALJ should have obtained additional evidence, and that her failure to do so means that her step two determination lacks substantial evidence. Plaintiff also alleges that her failure to take medication should not be considered against her.

At step two, the social security regulations contemplate that the administrative law judge first consider whether there are any medically determinable impairments and then determine whether any of the medically determinable impairments are "severe." 20 C.F.R. § 404.1529. An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. Id. § 404.1521. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. Id. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

Generally, an error at step two is harmless because it is a threshold test. 20 C.F.R. § 404.1520(c)–(g). As long as one

impairment is found to be severe, all medically determinable impairments are considered at subsequent steps, including non-severe impairments. Id. However, an error can harm the claimant if an impairment is improperly found to be not medically determinable or when non-severe impairments are not considered at later steps.

Here, Plaintiff did not allege that her back pain or fibromyalgia should have been considered at step three. Thus, Plaintiff can only have been harmed by an error at step two if limitations from the impairment misclassified at step two should have been, but were not, considered in the RFC analysis. However, the only evidence Plaintiff offered of her limitations from these impairments was her testimony and self-reports to providers. As discussed above, the ALJ properly found that her testimony and claims with regard to those limitations were not credible and Plaintiff's failure to take medication was an appropriate factor to use in discounting her credibility. As discussed above, the Court finds that Plaintiff cannot argue that the ALJ should have obtained additional evidence without proffering or at least describing the additional evidence. Plaintiff points out that she was positive for twelve of eighteen fibromyalgia tender points and that she had mild muscle spasms in her back on one occasion. However, even if credited, those records address whether her back pain and fibromyalgia were medically determinable, not whether they caused limitations sufficient to be considered in the RFC analysis. Thus, the ALJ had substantial evidence to conclude that Plaintiff's back pain and fibromyalgia were not severe, and even if she erred in making this determination, such error was harmless because Plaintiff has provided no credible evidence of the limitations arising from her back pain or fibromyalgia.

### C. The ALJ's credibility assessment

As discussed above, the ALJ's credibility determination was supported by substantial evidence. Plaintiff's testimony was properly discounted because she consistently denied pain in her treatment records, refused to take available medication for her fibromyalgia despite taking Clonazepam and Effexor for anxiety and depression, engaged in a wide variety in activities of daily living that undermined her subjective claims, provided different rationales for quitting her job at K-Mart, provided different sobriety dates to different providers, filed disability on the same day she was forced to move out of her house and into a shelter, was the sole caretaker for a one-month old infant and was taking steps to become the sole caretaker for her nine-year old son, and because her mother requested a drug test because she did not trust her. The ALJ's credibility finding is entitled to deference and should not be discarded lightly, given her opportunity to observe the individual's demeanor, Murphy v. Schweiker, 524 F.Supp. 228, 232 (E.D.Pa.1981), and an ALJ's credibility determination need only be supported by substantial evidence on the record as a whole, Miller v. Commissioner of Soc. Sec., 172 F.3d 303, 304 n. 1 (3d Cir.1999). Because the ALJ properly discredited Plaintiff's subjective complaints, she also properly excluded them from her RFC assessment. Therefore, the ALJ's determinations at steps four and five were supported by substantial evidence.

### VI. Recommendation

Therefore, the Court finds that Plaintiff has failed to show any clear prejudice from the ALJ's supposed failure to adequately develop the record, the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were sup-

ported by substantial evidence. Brown, 845 F.2d at 1213; Johnson, 529 F.3d at 200; Pierce, 487 U.S. at 552, 108 S.Ct. 2541 (1988); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir.1999); Johnson, 529 F.3d at 564; Richardson, 402 U.S. at 401, 91 S.Ct. 1420.

Accordingly, it is HEREBY RECOMMENDED:

1. This appeal be DENIED, as the Plaintiff suffered no clear prejudice from appearing without counsel and the ALJ's decision is supported by substantial evidence; and

2. The Clerk of Court shall CLOSE the case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: July 29, 2014